# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| ROMIE HARRIS, JR., AMY HARRIS,<br>RUBY FRANCIS FOWLER, MARY<br>LOIS GREEN, JAMES THOMAS,<br>LULA THOMAS and JANIE<br>BUFORD,<br>　　　Plaintiffs<br><br>v.<br><br>PACIFICARE LIFE AND HEALTH<br>INSURANCE COMPANY, ROBERT<br>D. BELL, ELIZABETH R. CLARK,<br>WILLIE C. TILLIS, and Fictitious<br>Defendants A through Z, those<br>corporations, partnerships, LLC's,<br>individuals or other entities who<br>conduct contributed to the damages<br>claimed herein whose names are not<br>yet known to Plaintiffs but will be<br>substituted by amendment when<br>ascertained.<br>　　　Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:06-CV-00956 |

## AFFIDAVIT OF ROBERT D. BELL

| | |
|---|---|
| STATE OF GEORGIA | § |
| | § |
| COUNTY OF DOUGHERTY | § |

BEFORE ME, the undersigned authority, personally appeared ROBERT D. BELL,

who, after being by me duly sworn, deposed and said as follows:

1.　"My name is Robert D. Bell. I am over 18 years of age and am fully

competent to make this affidavit. I have personal knowledge of each and every factual

matter stated herein.

2.　I am a named defendant in the above-referenced lawsuit, but I have not been

served with or otherwise received a copy of the civil summons and complaint. Additionally,

I do not reside at 508 North Cleveland Street, Albany, Georgia. My full name is Robert Dudley Bell, and I do not now and have never gone by the name of "Tommy." The signature on the certified mail return filed with the Court, and attached as Exhibit 1 hereto, is not my signature."

FURTHER, AFFIANT SAYETH NAUGHT.

_Robert D Bell_
ROBERT D. BELL

**SUBSCRIBED AND SWORN TO BEFORE ME** on this the 28 day of November, 2006.

_Lynda L. Kimbrough_
Notary Public - State of Georgia

Notary Public, Terrell County, Georgia
My Commission Expires Feb. 15, 2010

# Exhibit 1

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Robert D. Bell
208 North Cleveland Street
Albany, Georgia 31701

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *Tommy Bell*    ☐ Agent
                  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
*Tommy Bell*    9-25-06

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

CV-06-91

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7004 2890 0000 1192 3040

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# EXHIBIT B



Slip Copy                                                                                     Page 1

Slip Copy, 2006 WL 1587443 (W.D.Wash.), Med & Med GD (CCH) P 301,888
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Uhm v. Humana, Inc.W.D.Wash.,2006.
  United States District Court, W.D. Washington,
    at Seattle.
  Do Sung UHM and Eun Sook Uhm, a married
  couple, individually, and for all others similarly
    situated, Plaintiffs,
              v.
  HUMANA, INC., a Delaware corporation, Humana
  Medical Plan, a Florida corporation, Humana
  Health Plan, Inc., a Kentucky corporation, all d/b/a
    Humana, Defendants.
      **No. C06-0185-RSM.**

        June 2, 2006.

Joseph Andrew Grube, Ricci Grube Aita, Scott C.
Breneman, Breneman Law Firm, Seattle, WA, for
Plaintiffs.
Arissa M. Peterson, Mary Rebecca Knack,
Williams, Kastner & Gibbs, Seattle, WA, Brian D.
Boyle, O'Melveny & Myers, Washington, DC, for
Defendants.

  ORDER GRANTING DEFENDANTS' MOTION
  TO DISMISS FOR FAILURE TO STATE A
         CLAIM
RICARDO S. MARTINEZ, District Judge.
**\*1** This matter comes before the Court on defendant
Humana Health Plan, Inc.'s Motion to Dismiss for
Failure to State a Claim. (Dkt.# 9-1). Remaining
defendant Humana, Inc. has joined in the motion to
dismiss.[FN1] (Dkt. # 24). Oral argument was held
on May 26, 2006, and the matter has been fully
considered. For the reasons set forth below,
defendants' motion shall be granted.

      FN1. On April 18, 2006, plaintiffs filed an
      objection to Humana, Inc .'s joinder in
      Humana Health Plan's motion to dismiss.
      (Dkt.# 25). However, the same legal

arguments apply to Humana, Inc. and
Humana Health Plan, Inc. in this case, and
the Court finds that Humana Inc.'s joinder
in the motion to dismiss is proper.

In this action, plaintiff brought various state-law
claims against defendants, who are sponsors of a
Medicare Part D ("Part D" or "Drug Benefit")
prescription drug plan ("PDP"). Defendants argue
that the Medicare Prescription Drug, Improvement,
and Modernization Act of 2003 ("MMA") (Pub.L.
No. 108-173, 117 Stat.2066 (codified in scattered
sections of 42 U.S.C)), expressly preempts state law
with respect to any aspect of the Drug Benefit for
which there are federal standards. Defendants assert
that plaintiffs' claims are preempted by federal law
because there are federal standards which govern
the subject matter of each of plaintiffs' claims.
Defendants further argue that plaintiffs may not
seek judicial review of their claims until they have
exhausted the MMA-established administrative
remedies for coverage determinations and other
grievances.

Plaintiffs respond that Congress did not intend for
the MMA's express preemption language to
preempt state tort and contract claims. Plaintiffs
further argue that their claims do not "arise under"
the Medicare Act, and that the claims are not
preempted, according to the rule set out in *Heckler
v. Ringer,* 466 U.S. 602, 615, 104 S.Ct. 2013, 80
L.Ed.2d 622 (1984). Plaintiffs also argue that the
doctrine of exhaustion of administrative remedies is
not applicable to plaintiffs because they do not seek
a coverage determination and because the grievance
procedure for non-coverage-determination
grievances would be futile.

            DISCUSSION

         *A. Background*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 1587443 (W.D.Wash.), Med & Med GD (CCH) P 301,888
**(Cite as: Slip Copy)**

Plaintiffs are senior citizens who wished to enroll in the new Medicare Part D prescription drug benefit program created by the MMA. (Dkt. # 1-1 at 2). The Drug Benefit is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency. (Dkt. # 9-1 at 4).

Plaintiffs allege that they chose defendant Humana's prescription drug plan ("PDP") from among many PDP options. (Dkt. # 1-1 at 7). In choosing defendants' plan, plaintiffs relied on defendants' advertising materials. (Dkt. # 1-1 at 8). Plaintiffs then completed the Humana PDP enrollment form. (Dkt. # 1-1 at 7). Defendants represented to plaintiffs that they would receive the Drug Benefit beginning on January 1, 2006. (Dkt. # 1-1 at 7). Defendants began charging plaintiffs a monthly premium in January, 2006. (Dkt. # 1-1 at 4). Defendants' PDP required that enrollees use a mail-order form to obtain their prescription drugs. (Dkt. # 1-1 at 9). Between mid-December and early February 2006, plaintiffs made numerous requests for Drug Benefit order forms and instructions, but defendants failed to provide them to plaintiffs. (Dkt. # 1-1 at 9-10). Plaintiffs were forced to purchase their prescription drugs out-of-pocket at retail prices. (Dkt. # 1-1 at 10).

**\*2** Plaintiffs commenced this action on February 2, 2006. (Dkt. # 1-1 at 1). They claim breach of contract, violation of state consumer protection statutes, unjust enrichment, fraud, and fraud in the inducement. (Dkt. # 1-1 at 14-17). Plaintiffs purport to bring this action as a class action under F.R.C.P. 23. (Dkt. # 1-1 at 11-13).

Defendants have moved to dismiss for failure to state a claim pursuant to F.R.C.P. 12(b)(6).

*B. Motion to Dismiss Standard*

In the context of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must (1) construe the complaint in the light most favorable to plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *See,*

*Cahill v. Liberty Mutual Insurance Company,* 80 F.3d 336, 337-38 (9th Cir.1996).

*C. Preemption*

Defendants argue that the MMA expressly preempts plaintiffs' state law claims. When interpreting an express preemption clause, the Court first focuses on the plain meaning of the statutory language, which provides the best evidence of congressional intent. *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). The relevant statutory language is found in 42 U.S.C. § 1395w-26(b)(3) (2006), which provides:
The standards established under this part shall supersede any state law or regulation (other than State licencing laws or State laws relating to plan solvency) with respect to [Medicare Part C managed care] plans which are offered by [Medicare managed care] organizations under this part.

The clause applies to Medicare Part D Drug Benefit providers pursuant to 42 U.S.C. § 1395w-112(g) (2006). The language of the MMA preemption clause is clear: if Part D establishes standards that cover plaintiffs' claims, then those standards supersede state law, and plaintiffs' state law claims are preempted.[FN2]

> FN2. Plaintiffs argue that their claims do not "arise under" the Medicare Act and are therefore not preempted by federal standards pursuant to the rule in *Heckler v. Ringer.* However, the *Heckler* standard does not apply here. In that case, the court interpreted a section of the Medicare Act which made judicial review possible only after the exhaustion of the procedure provided in 42 U .S.C. § 405(g)-(h). *Heckler,* 466 U.S. at 605. The provision in question in *Heckler* actually contains the language "arise under," while the provision in question here has no such language. *Id.* at 615. Additionally, the *Heckler* decision informs remedy exhaustion analysis, and not preemption

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3

Slip Copy, 2006 WL 1587443 (W.D.Wash.), Med & Med GD (CCH) P 301,888
**(Cite as: Slip Copy)**

analysis.

Defendants argue that the regulations for "approval of marketing materials and enrollment forms" preempt plaintiffs' claims insofar as they relate to defendants' marketing materials. *See* 42 C.F.R. § 423.50 (2005). The regulations establish comprehensive standards for marketing materials, and they provide for a mandatory CMS approval process before those marketing materials can be used. *Id* . Included in the regulations are provisions prohibiting marketing materials that "could mislead or confuse Medicare beneficiaries, or misrepresent the Part D sponsor or its Part D plan." § 423.50(f)(iv). There are clearly standards established under Medicare Part D statute with respect to marketing materials, and those standards supersede state law pursuant to the express preemption language of Part D. Thus, plaintiffs' consumer protection claims are preempted, and their fraud and fraud in the inducement claims are preempted to the extent that they rely on defendants' marketing materials.

*3 Defendants further argue that plaintiffs seek a " coverage determination" and that their claims are therefore governed exclusively by the coverage determinations process set out in 24 C.F .R. § 423.562 et seq. According to § 423.566, a coverage determinations is: 1) a decision not to provide or pay for a Part D drug; 2) failure to provide a coverage determination in a timely manner; 3) a decision concerning an exceptions requests under two different sections of the part; 4) a decision about the amount of cost sharing for a drug. 42 C.F.R. § 423.566(b) (2005).

Plaintiffs argue that they do not seek-or seek to appeal-a "coverage determination." They argue that they do not claim that defendants have made an incorrect decision about whether to pay for a certain drug, nor do they complain of any of the other conduct listed in the "coverage determination" definition. Instead, they claim that they were outside the system entirely because they did not have access to the order forms and instructions by which they could order prescription drugs. Defendants contend that plaintiffs' claim is, at bottom, one about failure to provide coverage. Plaintiffs' complaint alleges

that defendants breached their contract when defendants "failed to provide prescription drug benefits as promised," and that defendants were unjustly enriched because defendants charged premiums but failed to provide drug benefits.

The Court agrees with defendants that plaintiffs' claims fall within the ambit of the coverage determination procedures and appeals process outlined in 24 C.F.R. § 423.562 et seq. Accordingly, the coverage determination regulations promulgated under Part D supersede plaintiffs' state contract and unjust enrichment claims, and their fraud claims to the extent that those stem from a failure to provide benefits as promised.

Even if plaintiffs were not seeking a coverage determination, their claims would nonetheless be preempted by other Part D standards. In addition to "coverage determination" appeals procedures, Part D also establishes grievance procedures. 42 C.F.R. § 423.564 (2005). The grievance procedures apply to any non-coverage-determination dispute between a PDP sponsor and its enrollee about any operations, activities, or behavior of the PDP sponsor. *See* 42 C.F.R. §§ 423.560, 423.564 (2005). The regulations require that a PDP sponsor provide "meaningful procedures for timely hearing and resolving grievances," subject to certain standards outlined by CMS. 42 C.F.R. § 423.564(a), (e)-(g). These grievance procedures cover plaintiffs' complaint that defendants failed to provide drug order forms and instructions. As a result, plaintiff's contract and unjust enrichment claims, and their fraud claims to the extent that they relate to promises to provide forms and instructions, are preempted by the federally established grievance procedures.

Plaintiffs argue that preemption by grievance procedures leads to the "absurd" result of making PDP sponsors the "sole and final judges of any claims brought against them." However, grievances, even when adjudicated by insurance companies themselves, are not entirely inconsequential. PDP sponsors must maintain records of all grievances and their dispositions, and they must report all grievances to CMS. 42 C.F.R. § 423.564(g); Medicare Part D Reporting Requirements, CMS,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                              Page 4

Slip Copy, 2006 WL 1587443 (W.D.Wash.), Med & Med GD (CCH) P 301,888
**(Cite as: Slip Copy)**

Jan. 25, 2006. CMS then has the authority to impose "intermediate sanctions," including fines of up to $100,000, on PDP sponsors for violations including misrepresentation and failure to provide medically necessary items. 42 C.F.R. §§ 423.750, 423.752 (2005).

**\*4** Plaintiffs also argue that CMS's commentary indicates that Congress did not intend to preempt state contract and tort remedies. Specifically, plaintiffs cite CMS's opinion that Congress did not intend to preempt state claims for torts such as wrongful death. 70 Fed.Reg. 4362 (Jan. 28, 2005). CMS goes on to say that Congress did not intend to preempt state contract law with respect to disputes between plans and their *subcontractors. Id.* In short, CMS believes that "an enrollee will still have state remedies available in cases in which the legal issue before the court is independent of an issue related to the organization's status" as a PDP sponsor. *Id.* Defendants point out, however, that this action is entirely derived from defendants' provision of a Part D drug benefit, and not from its other activities as a private insurer. (Dkt. # 27 at 5). Accordingly, the plaintiffs' claims are related to the organization's status as a PDP sponsor, and Congress intended to preempt them.

Furthermore, the legislative history of the preemption provision makes it clear that Congress intended Part D preemption to be broad in scope. Prior to the MMA, state laws were preempted wherever they were "inconsistent" with federal standards, or when they related to one of four specified categories. 42 U.S.C. § 1395w-26(b)(3) (2002). The MMA, in contrast, provided that federal standards shall supersede all state laws and regulations with respect to PDP plans, except for standards relating to licensure and solvency. *See* 42 U.S.C. §§ 1395w-26(b)(3), 1395w-112(g) (2006). As CMS explains this change: "[t]he [old] presumption was that a state law was not preempted if it did not conflict with a [Medicare managed care] requirement and did not fall into one of the four categories where preemption was presumed ... [T]he MMA reversed this presumption and provided that state laws are *presumed to be preempted* unless they relate to licensure or solvency." 70 Fed.Reg. 4319 (emphasis added).

Additionally, however harsh preemption may seem to particular claimants, it is consistent with the structure and purpose of the MMA. In discerning the precise scope of express preemption, the Court may look to the statutory framework and the structure and purposes of the statute as a whole. *Medtronic v. Lohr,* 518 U.S. 470, 484, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The Medicare statutes and regulations create an exceedingly complex national program which requires administration by agencies with expertise in the area. As CMS has noted when discussing the preemption prevision with respect to the Medicare managed care program, "Congress intended that the ... program, a Federal program, operate under Federal rules." 69 Fed.Reg. 46904 (Aug. 3, 2004). Furthermore, CMS expressed its opinion that Congress broadened the scope of preemption in order to facilitate the operation of regional PDP providers. *Id.* To this end, Congress recognized that "establishing a uniform set of grievance standards [would] reduce confusion and burden for enrollees and plans." 70 Fed.Reg. 4362 (Jan. 28, 2005). The structure and purpose of the Medicare statutes confirm Congress's intent to preempt most state law with federal standards.

### D. Exhaustion of Remedies

**\*5** Because this Court finds that plaintiffs' claims are preempted for the reasons stated above, the exhaustion of remedies questions raised by the parties are moot.

### CONCLUSION

Accordingly, the Court hereby ORDERS that:

Defendant's motion to dismiss (Dkt.# 9-1) is GRANTED in its entirety, and plaintiff's claims are DISMISSED for failure to state a claim on which relief may be granted.

W.D.Wash.,2006.
Uhm v. Humana, Inc.
Slip Copy, 2006 WL 1587443 (W.D.Wash.), Med & Med GD (CCH) P 301,888

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 5

Slip Copy, 2006 WL 1587443 (W.D.Wash.), Med & Med GD (CCH) P 301,888
**(Cite as: Slip Copy)**


Briefs and Other Related Documents (Back to top)

• 2006 WL 1501150 (Trial Motion, Memorandum and Affidavit) Defendants Humana Health Plan, Inc.'s And Humana Inc.'s Reply Memorandum in Support of Their Motion to Dismiss (Apr. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 1501149 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant Humana Health Plan, Inc.'s Motion to Dismiss for Failure to State a Claim (Apr. 10, 2006) Original Image of this Document (PDF)
• 2006 WL 1176838 (Trial Motion, Memorandum and Affidavit) Defendant Humana Health Plan, Inc.'s Motion to Dismiss for Failure to State A Claim (Mar. 6, 2006) Original Image of this Document (PDF)
• 2:06cv00185 (Docket) (Feb. 6, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

<u>UNITED STATES DISTRICT COURT</u>
<u>MIDDLE DISTRICT OF ALABAMA</u>

| | | |
|---|---|---|
| ROMIE HARRIS, JR., AMY HARRIS, RUBY FRANCIS FOWLER, MARY LOIS GREEN, JAMES THOMAS, LULA THOMAS and JANIE BUFORD, | §<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 2:06-CV-00956 |
| PACIFICARE LIFE AND HEALTH INSURANCE COMPANY, ROBERT D. BELL, ELIZABETH R. CLARK, WILLIE C. TILLIS, and Fictitious Defendants A through Z, those corporations, partnerships, LLC's, individuals or other entities who conduct contributed to the damages claimed herein whose names are not yet known to Plaintiffs but will be substituted by amendment when ascertained, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

**PACIFICARE LIFE AND HEALTH INSURANCE COMPANY'S**
**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO**
**REMAND**

COMES NOW PacifiCare Life and Health Insurance Company, ("PacifiCare"), and files

this Memorandum of Law in Opposition to Plaintiffs' Motion to Remand:

## I.    **INTRODUCTION**

1.1    In their Complaint, Plaintiffs seek to recover compensatory and punitive damages

against PacifiCare and insurance broker co-defendants for their alleged actions, which

purportedly included: contacting Plaintiffs; misrepresenting PacifiCare's Secure Horizons Direct

"Private Fee For Service" ("PFFS") Medicare product; dis-enrolling Plaintiffs from their existing

Medicare coverage; redirecting Plaintiffs' Medicare premiums to PacifiCare; and restricting or

denying Plaintiffs' Medicare coverage and benefits.  While Plaintiffs have cast their claims as arising under state law,[1] the factual basis of all of their claims center on alleged misrepresentations concerning one of PacifiCare's Medicare insurance plans and alleged deficiencies by PacifiCare in providing Medicare coverage and benefits to Plaintiffs.

1.2    On October 20, 2006, PacifiCare removed this action from the Circuit Court of Bullock County, Alabama pursuant to 28 U.S.C. § 1331 & 1444(b) on grounds that Plaintiffs' claims herein all arise under the federal Medicare Act, 42 U.S.C. 1395w-221 – w28, as amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), and, accordingly, are preempted by federal law.

1.3    Plaintiffs' Motion to Remand complains that removal was improper on two grounds.  First, Plaintiffs assert that removal was procedurally defective because Defendant Robert Bell did not join in the removal "even though he had been served."  (Motion at ¶ 4). Second, Plaintiffs claim that PacifiCare has not met its burden of demonstrating a substantial question of federal law necessary to adjudicate Plaintiffs' claims herein, or that the Medicare Act provides for complete preemption.  (Motion at ¶¶ 5-6).  As shown below, neither of these grounds have merit, and Plaintiffs' Motion to Remand should be denied.

---

[1]    Plaintiffs' Complaint alleges the following causes of action against PacifiCare: (1) fraud (Count I), (2) unjust enrichment (Count II), (3) negligent infliction of emotional distress (Count III), (4) wantonness (Count IV), and (5) outrage (Count V).  (*See* Plaintiffs' Complaint, pp. 3-5).  In addition to damages, Plaintiffs seek disgorgement of Medicare premiums from PacifiCare and entry of a permanent injunction to enjoin Defendants from contacting other persons in Bullock County, Alabama regarding the PacifiCare PFFS product.  (*Id.* at ¶ 29).

## II.    ARGUMENT & AUTHORITIES

### A.    Removal Was Procedurally Proper.

2.1    Plaintiffs first contend that PacifiCare has violated the "unanimity rule" by failing to secure consent to removal from all co-defendants served at the time of the removal, specifically Defendant Robert Bell.  (Plaintiffs' Memorandum of Law, at p. 2).  In support of this contention, Plaintiffs rely solely on the docket sheet attached to the Notice of Removal, which shows the filing of a return of service concerning Bell.  However, the docket sheet merely reflects that a return of service was filed – it does not establish that service was properly made on Mr.  Bell, the co-defendant in this case.  Federal law requires only that properly served defendants consent to removal.  *Harper v. AutoAlliance Intern, Inc*., 392 F.3d 195 (6th Cir. 2004).

2.2    The uncontroverted evidence establishes that Bell was not, in fact, properly served.  (*See* Affidavit of Robert Bell, attached hereto as Exhibit A and incorporated herein by reference, at its ¶ 2) (hereafter "Bell Affidavit").  Bell testifies that as of November 28, 2006, long after removal by PacifiCare, he still has "not been served with or otherwise received a copy of the civil summons and complaint," and he does not reside at the address listed in the Complaint (which would presumably be the address where service was attempted).  (*Id*.).

2.3    Moreover, the return of service on file is defective on its face.  First, it was purportedly served at 508 North Cleveland Street, Albany, Georgia, which is not the address of Mr. Bell.  (Bell Affidavit at ¶ 2).  Moreover, it was apparently signed "Tommy Bell."  Mr. Bell's full name is Robert Dudley Bell; he does not go by the name of "Tommy."  (Bell Affidavit at ¶ 2).  The signature that appears on the return is not co-defendant Bell's signature.  (Bell Affidavit at ¶ 2 and its Exhibit 1).  Therefore, the evidence establishes that co-defendant Robert D. Bell

was not properly served at the time of removal and, accordingly, his consent to removal was not required.  Removal was procedurally proper.

**B.**    **Federal Jurisdiction Established**

2.4    Plaintiffs also contend that this Court lacks federal question jurisdiction because PacifiCare has failed to establish that Plaintiffs seek relief under federal law or that their claims are preempted by federal law.  (Plaintiffs' Memorandum of Law at pp. 3-4).  While Plaintiffs are correct that federal jurisdiction is normally determined by the "well-pleaded complaint" rule, there is an exception "[w]hen a federal statute wholly displaces the state-law cause of action through complete preemption," thus permitting removal.  *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).  In this case, regardless of how Plaintiffs have framed their Complaint, the gravamen of Plaintiffs' claims arise under federal law and are, in fact, completely preempted by federal law.

2.5    Specifically, Plaintiffs seek to recover damages from PacifiCare as alleged enrollees in a Medicare Part C Medicare Advantage plan offered by PacifiCare in the form of its Secure Horizons Direct PFFS Plan (the "PFFS Plan").  As shown below, Plaintiffs' claims all relate to standards established under the Medicare Act for Medicare Advantage plans offered by private insurers.  Plaintiffs' claims are thus superseded and preempted by federal law, namely 42 U.S.C. § 1395w-26(b)(3) (2006) (the Medicare Modernization Act or "MMA").

*1.*    *Statutory & Regulatory Preemption Under the Medicare Act/MMA.*

2.6    In 2003, Congress passed the Medicare Prescription Drug, Improvement, and Modernization Act (also known as "MMA").  Under the MMA, Congress delegated the development of standards for marketing of Medicare Advantage plans and Prescription Drug Plans ("PDP's") and beneficiary enrollment to the Department of Health & Human Services ("HHS"), a federal agency with specialized knowledge and long administrative experience in the

area.  Congress included a preemption provision in the MMA that is even broader and more inclusive than the preemption provision in previous Medicare statutes.  *Compare* 42 U.S.C. § 1395w-26(b)(3) (2006) *with* 42 U.S.C. § 1395w-26(b)(3) (2002).  Previously, the Medicare Act preempted state laws and regulations to the extent that such laws and regulations were inconsistent with federal enactments.  *See* 42 U.S.C. §1395w-26(b)(3).  However, with the enactment of Section 232 of the MMA, Congress amended 42 U.S.C. §1395w-26(b)(3), effective 2003, to include a much broader preemption provision:

> Relation to State laws.  The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part.[2]

2.7     The legislative history supports that Congress intended MMA preemption to be broad in scope:  "[t]he MA program is a Federal program operated under Federal rules.  State laws do not, and should not apply…."  H.R. Rep. No. 108-391, at 557 (2003), *as reprinted in* 2003 U.S.C.C.A.N. (108 Leg. His.) 1808, 1926.  Accordingly, the new preemption provision significantly expanded the scope of federal preemption for claims related to Medicare Advantage and PDP plans.  *See* 1395 C.F.R. §422.402.  Congress acknowledged and appreciated the significance of a broader preemption provision:  "[H]owever harsh preemption may seem to particular claimants, it comports with the purpose and structure of the MMA."  69 Fed. Reg. 49604 (August 3, 2004).

2.8     The Centers for Medicare and Medicaid Services ("CMS"), the division of HHS that operates the Medicare program, incorporated language in the implementing regulations for Part D (the PDP provisions) that mirrors the statutory preemption language, declaring that "[t]he standards established under this part supersede any State law or regulation (other than State

---

[2]     It is no coincidence that Section 232 is titled "Avoiding Duplicative State Regulation."  This clause is also applicable to drug benefit providers.  (42 U.S.C. §1395w-112(g)).

licensing laws or State laws relating to plan solvency) for Part D plans offered by Part D plan sponsors." 42 C.F.R. § 423.440(a) (2005). CMS understood the importance of the change: "[t]he [earlier] presumption was that a State law was not preempted if it did not conflict with a [Medicare managed care] requirement and did not fall into one of the four categories where preemption was presumed . . . [T]he MMA reversed this presumption and provided that *State laws are presumed to be preempted* unless they relate to licensure or solvency." 70 Fed. Reg. 4319 (emphasis added). CMS interprets MMA preemption to extend even to areas of *future* federal regulation: "Federal preemption is not exclusive to existing areas of Federal regulation. State standards, including those established through case law, are preempted to the extent that they specifically would regulate MA plans, with the exception of State licensing and solvency laws." (Medicare Managed Care Manual, Chapter 10, "20 – Extent of Federal Preemption with Respect to State Regulation of MA Plans.") Indeed, it points to the fact that "only those requirements that are directly related to becoming State licensed would be free from the possibility of Federal preemption." *Id*.

2.9 Accordingly, federal preemption under the Medicare Act/MMA reaches any complaint over participation in any Medicare Advantage/PDP plan. For example, the MMA directs CMS to establish regulations "relating to the approval of marketing material" and associated forms. 42 U.S.C. § 1395w-101(b)(1)(B)(vi) (2006). Under this mandate, CMS designed a detailed framework for the review and approval of advertisements and other promotions of plan sponsors like PacifiCare. *See generally* 42 C.F.R. § 423.50 (2005). Every form of marketing, including brochures, radio and television advertisements, internet materials, and direct presentations, is subject to this review by CMS. *Id*. at § 423.50(c). As part of this review, CMS reviews materials for misrepresentations or inaccurate statements, rejecting any marketing materials having the potential to mislead beneficiaries. *Id*. at § 423.50(d)(4). There

6

are also restrictions related to marketing activities, including engaging in activities that could mislead or confuse Medicare beneficiaries, misrepresent the sponsor or plan, or involving solicitation of Medicare beneficiaries door-to-door. *Id.* at § 423.50(f). Thus, any complaint over marketing materials, representations made in marketing a MA/PDP product, or marketing activities in general, fall within the purview of federal standards established under the Medicare Act/MMA.

2.10     Preemption also reaches any complaints by a beneficiary over enrollment in a Medicare Advantage/PDP plan. Congress charged HHS with establishing "a process for the enrollment" of beneficiaries in private MA/PDP plans. 42 U.S.C. § 1395w-101(b)(1)(A) (2006). In response, CMS promulgated regulations covering the enrollment process, including standard enrollment procedures, alternative enrollment mechanisms, and guidelines for processing enrollment requests. *See generally* 42 C.F.R. § 423.32 (2005). Among other things, these guidelines establish acceptable time periods available to Medicare Advantage/PDP sponsors for processing enrollment requests and sending notices to beneficiaries of enrollment decisions. *Id.* at 423.32(c)-(d). Throughout, the regulations envision an active role for CMS in the oversight and monitoring of the enrollment process. *See, e.g., id.* at § 423.32(c) (providing for processing of enrollment requests "in accordance with CMS enrollment guidelines"); *id.* at § 423.32(d) (notice must be provided "in a format and manner specified by CMS").

2.11     Finally, preemption applies to any complaints by a beneficiary and related disputes concerning Medicare Advantage/PDP plan services, including benefit and coverage disputes. Specifically, the MMA and its implementing regulations channel beneficiary complaints and disputes into exclusive, federal dispute resolution mechanisms. In general, beneficiaries may file a grievance concerning "any aspect of the operations, activities, or behavior of a Part D plan sponsor." 42 C.F.R. § 423.560 (2005). There is also a separate and

again exclusive grievance and appeal process for disputes about coverage determinations. *See* 42 C.F.R. §§ 423.566, 423.568, 423.570, 423.580-90, 423.600-04, 423.610, and 423.630 (2005). Any complaint relating to the quality of services received may also be addressed to an independent quality improvement organization, a separate and unaffiliated entity dedicated to improving the health care services enjoyed by beneficiaries. *See* 42 C.F.R. §§ 423.162, 423.564(b) (2005).

2.12    In summary, there is a comprehensive federal statutory and regulatory framework addressing marketing, enrollment, benefit and coverage determinations, and grievance procedures under all Medicare Advantage /PDP plans. All claims, whether couched as state law claims or otherwise, related to these subjects are completely preempted under the broad MMA preemption provision made effective in 2003.

**2.    *Judicial Application of Preemption Requirements.***

2.13    Congress has the authority to define the extent to which federal statutes preempt state law. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95-98 (1982). Where, as here, Congress chooses to explicitly describe a federal law's preemptive reach, "the court's task is an easy one," namely that of enforcing Congressional intent. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).

2.14    Plaintiffs contend that it is "well established" that the Medicare Act does not provide for complete preemption, relying solely on two cases – *Burke v Humana Ins. Co.*, 1995 WL 841678 (M.D. Ala.) (unpublished) and *Grace v. Interstate Life & Accident Ins. Co.*, 916 F. Supp. 1185 (M.D. Ala. 1996). However, Plaintiffs fail to inform the Court that both of these cases were decided *prior* to the enactment of the MMA and its admittedly broader preemption provision in 2003. As such, neither case is instructive with respect to the newer and broader

MMA preemption standard.[3]    Moreover, even under the older, more narrow Medicare preemption standard, Courts held that that preemption applied to claims that are "inextricably intertwined" with claims for past or future Medicare benefits.  *See, e.g.*, *Heckler v. Ringer,* 466 U.S. 602, 606 (1984);  *Midland Psychiatric Associates, Inc. v. United States,* 145 F.3d 1000 (8th Cir. 1998);  *Bodimetric Health Services, Inc. v. Aetna Life & Casualty,* 903 F.2d 480 (7th Cir. 1990).

2.15    With the passage of the MMA, Congress declared that state standards concerning benefits and other activities governed by Medicare standards are *presumptively* preempted.  (*See* 70 Fed. Reg. 4319).  Courts that have considered the preemptive effect of the 2003 MMA amendment on claims against Medicare managed care contractors-- like PacifiCare--have found complete preemption of any state law claim, other than those relating to State licensing and solvency requirements.  *See, e.g., First Med. Health Plan, Inc. v. Vega*, 406 F. Supp. 2d 150, 154 (D.P.R. 2005) ("Congress made clear its intent to expressly preempt the application of any state law to Medicare Advantage programs, other than laws related to licensing or plan solvency.");  *Uhm v. Humana, Inc.*, 2006 WL 1587443 (W.D. Wash. June 2, 2006) (on appeal to the 9th Circuit) (holding that claims of consumer protection and fraud against a PDP were preempted by the MMA) (copy attached as Exhibit B).  Neither the Eleventh Circuit nor the federal courts in Alabama have addressed preemption under the new MMA provision.  Plaintiffs concede, however, that complete preemption exists for claims arising under the Employee Retirement Income Security Act ("ERISA") (Plaintiffs' Memorandum of Law at p. 6).  The broad preemption language used in the MMA closely follows ERISA's preemption provision.[4]

---

[3]    In any event, the *Burke* Court specifically noted that, unlike here, the defendants had failed to point to any congressional intent for preemption under the Medicare Act.  *Burke*, 1994 WL 841678 at *3. In *Grace*, the defendants did not even allege that the Plaintiff's claims were preempted.  *Grace*, 916 F. Supp. at 1191.

[4]    ERISA's preemption provision provides, with certain narrow exceptions, that ERISA's provisions "supercede any and all state laws insofar as they may now or hereafter relate to any employee benefit

Accordingly, the well-developed precedents regarding complete preemption of state law claims that are governed by ERISA provides additional support for broad MMA preemption. *See Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004).

2.16    Federal preemption applies not only to state regulation but also to private lawsuits under state law. Thus, if a plaintiff's private state law causes of actions relate to a field covered by federal regulations, they are preempted. *See Law v. Gen. Motors Corp.*, 114 F.3d 908 (9th Cir. 1997). Courts have found specifically that the broad scope of MMA preemption encompasses state contract and tort remedies. *See Uhm*, 2006 WL 1587443 at *3.

2.17    For example, in *Uhm v. Humana, Inc.*, Plaintiffs brought various state-law claims against sponsors of a Medicare Part D Prescription Drug Plan. *See* 2006 WL 1587443 at *1. Plaintiffs claimed they relied on defendants' advertising materials in choosing their PDP. *See id.* The *Uhm* Plaintiffs also claimed the PDP defendants represented to plaintiffs that they would receive drug benefits beginning on January 1, 2006. *See id.* Plaintiffs claimed they were not covered on January 1, 2006, as the PDP defendants promised, and as a result, Plaintiffs were forced to purchase their prescription drugs out-of-pocket at retail prices. *See id.* Plaintiffs asserted state law claims for breach of contract, violation of state consumer protection statutes, unjust enrichment, fraud, and fraud in the inducement. *See id.* at *2. The PDP defendants moved to dismiss for failure to state a claim, arguing that the MMA regulations governing marketing materials expressly preempted plaintiffs' state law claims based on allegedly fraudulent marketing or misrepresentation of the PDP's benefits. *See id.* The Court granted Defendant's motion, holding the "structure and purpose of the Medicare statutes confirm Congress's intent to preempt most state law with federal standards." *Id.* at *4. Plaintiffs' claims in this matter rely on similar allegations of misrepresentation in marketing and assert some

plan….[covered by ERISA]." 29 U.S.C. § 1144(a).    This supercession language parallels the broad preemption language in the MMA.

identical causes of action as set forth in *Uhm*.  The Court should therefore accept and rely on the

*Uhm* Court's persuasive reasoning.

**3.      Plaintiffs' Claims are Preempted.**

2.18    The Plaintiffs herein assert causes of action for fraud, unjust enrichment,

negligent infliction of emotional distress, wantonness, and outrage.  While ostensibly state law

claims, if the gravamen of Plaintiffs' allegations trigger federal preemption, the action may be

removed to federal court.  *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) (removal

of "state" common law contract and tort claims proper when those claims were preempted by

ERISA and properly recharacterized as federal in nature).

2.19    The pertinent factual allegations underlying Plaintiffs causes of action are as

follows:

(1)      Plaintiffs were enrolled *in the Medicare Advantage plan* sponsored by
Secure Horizons Direct, also known as a  "Private Fee
for Service" plan (Plaintiffs' Complaint at ¶ 13);

(2)      Defendants acted in concert to contact *Medicare recipients* in Bullock
County, Alabama, including Plaintiffs, and misrepresented that Plaintiffs
were required to enroll in Secure Horizons Direct "*under the federal
government's new prescription drug program,*" and misrepresented that
Defendants were *actually dis-enrolling Plaintiffs from regular Medicare
coverage* and enrolling them in Secure Horizons' private Medicare
Advantage plan(*Id*. at ¶¶ 14-16);

(3)      Plaintiffs' benefits and healthcare *coverage through Medicare* was
drastically *reduced*, and medical care previously provided was summarily
*denied by PacifiCare*, resulting in physical and mental injury and distress,
and large medical bills (*Id*. at ¶¶ 17-19); and

(4)      Defendants misrepresented themselves as signing up people for the
government's new prescription drug program, and *fraudulently diverted
Plaintiffs' Medicare premiums* to Defendants' Secure Horizons Direct
program  (*Id*. at ¶¶ 23, 28).

Simply put, Plaintiffs assert that Defendants: misrepresented that Plaintiffs were required to

enroll in Secure Horizons' Medicare Advantage plans to obtain prescription drug coverage under

Medicare' failed to inform Plaintiff that they were being dis-enrolled from regular Medicare coverage; reduced Plaintiffs' Medicare coverage; denied Plaintiffs' Medicare claims; and diverted Plaintiffs' Medicare premiums to PacifiCare.

2.20    All of Plaintiffs' claims are completely preempted by the Medicare Act/MMA for several independent reasons. First, Plaintiffs' primary allegation is one of fraud based on alleged misrepresentation of the benefits, requirements, terms, and conditions of enrollment in PacifiCare's PFFS Plan. (Plaintiffs' Complaint at ¶¶ 15, 17, 19, 22-26, 35). This allegation directly implicates standards set forth under the Medicare Act/MMA for enrollment, including Pacificare's marketing efforts and materials. 42 U.S.C. § 1395w-101(b)(1)(A), (B)(vi) (2006); 42 C.F.R. § 423.50 (2005).

2.21    Second, Plaintiffs complain that their benefits and coverage were reduced, medical care was denied to them under the PacifiCare Medicare Advantage plan, and that large medical bills which have not been paid by PacifiCare have resulted (in other words, that PacifiCare denied them Medicare benefits under its Medicare Advantage plan). (Plaintiffs' Complaint at ¶¶ 14-19). To the extent Plaintiffs allege that they did not receive the Part D coverage that they thought they were receiving by enrolling in the PacifiCare PFFS Plan, that claim is also essentially a claim for coverage or benefits. These allegations all relate to the extent or quality of benefits promised or received and claims paid or denied, and, therefore, Plaintiffs in effect complain of benefit or coverage determinations governed by the Medicare Act/MMA. Even under the narrow Medicare preemption standard that existed prior to 2003, these claims would be preempted because they are "inextricably intertwined" with claims for past or future Medicare benefits. *See, e.g.*, *Heckler v. Ringer,* 466 U.S. 602, 606 (1984); *Midland Psychiatric Associates, Inc. v. United States,* 145 F.3d 1000 (8th Cir. 1998); *Bodimetric Health Services, Inc. v. Aetna Life & Casualty,* 903 F.2d 480 (7th Cir. 1990).

2.22    Third, Plaintiffs' allegation of reduced benefits, diversion of premiums, and denial of medical care implicates the grievance and appeals process established under the Medicare Act/MMA.  42 C.F.R. §§ 423.560, 423.566, 423.568, 423.570, 423.580-90, 423.600-04, 423.610, 423.630 (2005).

2.23    Just as in *Uhm*, Plaintiffs' misrepresentation claims against PacifiCare in this case assert, in essence, that certain promises of benefits and coverage proved untrue.  And, as in *Uhm*, Plaintiff's misrepresentation, fraud, and unjust enrichment claims are preempted by the MMA marketing regulations.

2.24    Accordingly, Plaintiffs' claims, which all relate to PacifiCare's marketing efforts and/or materials, the extent or quality of benefits or coverage promised or provided to Plaintiffs, and Medicare-related grievance and appeal procedures, are completely preempted under the Medicare Act/MMA.  Therefore, this Court has original jurisdiction pursuant to 28 U.S.C. §1331, and Plaintiffs' Motion to Remand should be denied.  To the extent that any of Plaintiffs' state law claims survive preemption, this Court should exercise pendent jurisdiction and try them together with the federal claims.

2.25    Plaintiffs may contend that they will be left without a remedy if the Court holds that preemption exists.  However, as the *Uhm* Court held: "[h]owever harsh preemption may seem to particular claimants, it is consistent with the structure and purpose of the MMA….the structure and purpose of the Medicare statutes confirm Congress's intent to preempt most state law with federal standards."  *Uhm*, 2006 WL 1587443, *4.  The harshness of preemption in this instance is mediated by the availability of administrative remedies; indeed, Plaintiffs should be *required* to exhaust their administrative remedies before seeking judicial relief under controlling regulations.  *See* 42 C.F.R. §§ 422.560-422.612.  For example, Plaintiffs allege that they have had medical care denied.  If that is in fact true, Plaintiffs can use the administrative process to

show that their claims should have been paid. *See id.* §§ 423.562, 423.566. Plaintiffs also allege that they should not have been enrolled in the PacifiCare PFFS Plan, and that their premiums should be returned. Again, Plaintiffs can use the administrative process to seek disenrollment and a return of their premiums. *See id.* § 423.564. Plaintiffs have the opportunity to obtain a remedy directly from PacifiCare, and if they remain dissatisfied, they can then seek relief from a neutral third-party, and if they continue to remain dissatisfied, they can seek relief from the federal courts. *See id.* §§ 422.560-422.612. Exhaustion of these administrative remedies is a jurisdictional prerequisite to the relief sought by Plaintiffs herein.

## C.    Request for Costs/Fees Should be Denied

2.26    As shown herein, removal by PacifiCare was entirely proper, and this Court has subject matter jurisdiction over all claims asserted by Plaintiffs. However, in the unlikely event that the Court determines that jurisdiction is absent and remand is proper, PacifiCare respectfully requests that the Court decline Plaintiff's request for an award of costs and attorneys' fees for addressing the removal issue pursuant to 28 U.S.C. § 1447(c).

2.27    As the Court is aware, an award of costs and fees under Section 1447(c) is entirely discretionary. PacifiCare had a reasonable and good faith basis for seeking removal to this Court, and removal jurisdiction is certainly not "patently lacking," the standard invoked by the *Grace* opinion relied upon by Plaintiffs. *Grace v. Interstate Life & Accident Ins. Co.*, 916 F. Supp. 1185 (M.D. Ala. 1996). In fact, the *Grace* Court declined a request for an award of costs and fees, concluding that the issue of federal question jurisdiction "is far from a simple determination." *Id*. at 1192 ("In this action, the court finds that removal jurisdiction was not "patently lacking" because the issue of whether diversity jurisdiction or, alternatively, federal question jurisdiction, exists is far from a simple determination."). Similarly, PacifiCare should

not be penalized for a reasoned and good faith assertion of federal question jurisdiction beyond

remand, if deemed appropriate by the Court.

      **WHEREFORE**, PacifiCare Life & Health Insurance Company respectfully requests that

the Court deny Plaintiffs' Motion to Remand, and for any other relief to which it is entitled.

                          Respectfully submitted,


                        s/ William C. McGowin
                        Philip H. Butler (BUT007)
                        George B. Harris (HAR138)
                        William C. McGowin (MCG040)

OF COUNSEL

Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701

Paula Denney
Texas State Bar No. 05746950
John K. Edwards
Texas State Bar No. 24002040
Cedric D. Scott
Texas State Bar No. 24013474
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
Phone: 713-752-4200
Fax: 713-752-4221

                        ATTORNEYS FOR DEFENDANT
                        PACIFICARE LIFE AND HEALTH
                        INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

L. Cooper Rutland, Jr., Esq.
*Rutland & Braswell, L.L.C.*
208 N. Prairie Street
P.O. Box 551
Union Springs, AL 36089-0551

Robert G. Methvin, Jr., Esq.
Robert G. Miller, Esq.
James Matthew Stephens, Esq.
*McCallum, Methvin & Terrell*
201 Arlington Avenue South
Birmingham, AL 35205

and I hereby certify that I have mailed by U. S. Postal Service the document to the non CM/ECF participants:

Elizabeth R. Clark
505 Wisteria Place
Birmingham, AL 35216

Willie C. Tillis
306 Mullins Street
Opp, Alabama 36467

/s/ William C. McGowin
Of Counsel

1/1527625.1