UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ROMIE HARRIS, JR., AMY HARRIS, RUBY FRANCIS FOWLER, MARY LOIS GREEN, JAMES THOMAS, LULA THOMAS and JANIE BUFORD,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFICARE LIFE AND HEALTH INSURANCE COMPANY, ROBERT D. BELL, ELIZABETH R. CLARK, WILLIE C. TILLIS, and Fictitious Defendants A through Z,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>* CIVIL ACTION NO.: 2:06-CV-956-ID<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE
TO PLAINTIFFS' MOTION TO REMAND**

**COME NOW** the Plaintiffs, by and through their undersigned counsel of record, and provide the following Reply to Defendants' Response to Plaintiffs' Motion to Remand. The Plaintiffs adopt their previously stated arguments requesting remand of this action to the Circuit Court of Bullock County, Alabama, from which it was improperly removed. As further grounds in support of remand, the following is shown:

**<u>INTRODUCTION</u>**

The Plaintiffs' remand should be granted because Defendant Pacificare has failed to show that Defendant Bell was not properly served under Alabama law. Defendant's own supporting exhibits show that Bell was served by certified mail at the proper address, 208 North Cleveland St. (Exhibit A-1 to Defendant's Response to Remand). Consequently, because Defendant Bell did not

1

consent to removal, Defendant's removal is procedural defective, and remand is proper. Even if removal was not procedural defective, this case should be remanded because the pre-emption provision in the Medicare Act/MMA on which Pacificare relies applies only to preclude a state's attempt to establish standards related to Medicare Advantage Plans such as the one at issue here. The provision does not apply to preempt the private, state law causes of action at issue in this lawsuit.

### ARGUMENT

**I. Defendant Pacificare's Removal is Procedurally Defective Because Defendant Bell did not Consent to Removal, Even Though he had been Properly Served Under Alabama Law.**

Defendant Pacificare incorrectly argues that Defendant Bell was not served and, thus, not required to join in removal. The Eleventh Circuit follows the "unanimity rule", which requires "that in cases involving multiple defendants, all defendants must consent to removal." *Russell Corp. v. American Home Assurance Corp.*, 264 F.3d 1040, 1044 (11th Cir. 2001). "Like all rules governing removal, this unanimity requirement must be strictly interpreted and enforced because of the significant federalism concerns arising in the context of federal removal jurisdiction." *Id*. at 1049.

Defendant Bell was properly served under Alabama law. Rule 4 of the Alabama Rules of Civil Procedure provides that service shall be made "[u]pon an individual [...] by serving the individual *or by leaving a copy of the summons and the complaint at the individual's dwelling house or usual place of abode with some person of suitable age* and discretion then residing therein." ALA. R. CIV. P. 4(c)(1) (emphasis added). A plaintiff may also serve a defendant by certified mail. Rule 4(a)(5) specifically states, "[w]hen the plaintiff has requested service by certified mail, the plaintiff, at the request of the clerk, shall also furnish properly completed postal forms necessary for such

service." ALA. R. CIV. P. 4(a)(5).

Here, the Plaintiffs' service of Defendant Bell by certified mail was proper under Alabama law. Defendant Bell was served at his undisputed home address at 208 North Cleveland Street, Albany, Georgia. Pacificare argues, nonetheless, that the Plaintiffs served him at the wrong address. That is, Pacificare claims that the Complaint was served not at 208 North Cleveland, but at *508* North Cleveland Street, Albany, Georgia, which, according to Pacificare, "is not the address of Mr. Bell." (*See* Response to Plaintiffs' Motion to Remand, ¶2.3). Even though this address may have been incorrectly listed in the Complaint, Pacificare's own exhibit shows that Defendant Bell was actually served at his correct address at *208* North Cleveland Street (See Response to Plaintiffs' Motion to Remand, Exhibit A-1). Indeed, the certified mail return of service card attached to Pacificare's Response to Plaintiffs' Motion to Remand as Exhibit A-I shows service at the correct address, which is *208* North Cleveland Street, Albany, Georgia. Thus, under Alabama law, when this properly completed certified mail form was returned to the Bullock County Clerk of the Court, service was effected at the proper address (*208* North Cleveland Street).

Pacificare goes on to erroneously argue that Defendant Robert Bell was not properly served because he did not sign the certified mail receipt. While Defendant Bell purportedly did not sign the certified mail receipt, an individual by the name of "Tommy Bell" signed it *at the correct address*. As noted above, service can be effected "by leaving a copy of the summons and the complaint at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." ALA. R. CIV. P. 4(c)(1). Again, the certified mail receipt indicates that the Complaint was served at the proper address (*208* North Cleveland Street). It was signed by "Tommy Bell", an individual with the same last name as Defendant Robert Bell. The

affidavit of Defendant Bell submitted by Pacificare simply states that Defendant Bell "has never gone by the name 'Tommy'" and that the signature on the card is not that of Defendant Bell's. (*See* Affidavit of Robert Bell, attached as Exhibit A to Response to Plaintiffs' Motion to Remand). Bell's affidavit conspicuously fails, however, to declare that *208* North Cleveland Street is not his "dwelling house or usual place of abode"; that an individual named "Tommy Bell" does not reside at that correct address; and that "Tommy Bell" is not a person "of suitable age and discretion then residing therein." In short, the affidavit fails to offer any fact that would render the service improper.

In sum, because the docket sheet on file with the Circuit Court of Bullock County (attached as Exhibit B to Pacificare's Notice of Removal) confirms that Defendant Bell has been served, because the certified mail return of service card attached as Exhibit A-1 to Pacificare's Response to Plaintiffs' Motion to Remand confirms that service was effected at *208* North Cleveland Street, the proper address of Defendant Bell, and because there is nothing asserted in the affidavit of Defendant Bell or any pleadings filed by Pacificare which renders the service incomplete or improper, Defendant Bell was properly served on September 25, 2006. As such, Defendant Bell's failure to consent to removal renders the Notice of Removal procedurally defective under Eleventh Circuit precedent. This case should be remanded to its proper forum based on this reason alone. Even if it is not procedurally defective, remand is also proper because no basis for federal jurisdiction exists.

## II. Defendant Pacificare has Failed to Establish that Federal Jurisdiction Exists.

### A. The Medicare Act/MMA pre-emption provision only applies to state laws which attempt to *establish standards* relating to Medicare Advantage Plans.

Pacificare argues that the pre-emption provision in the Medicare Act/MMA precludes the

Plaintiffs' private, state law causes of action related to Pacificare's Medicare Advantage Plan. In making this argument, Pacificare erroneously relies upon 42 U.S.C.A. §1395w-26(b)(3), which states:

> Relation to State laws: The standards established under this part shall supercede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

It should be noted that this provision falls under the section entitled, "Establishment of other standards." This point is critical because this pre-emption provision applies only to preclude a state's attempt to "establish standards" relating to Medicare Advantage plans. It does not apply to preclude the Plaintiffs' private causes of action as asserted in the instant lawsuit. Simply put, Pacificare has taken a narrowly tailored pre-emption provision, which applies only to state standards regulating Medicare Advantage Plans, and argued that "[a]ll claims, whether couched as state claims or otherwise, related to ['marketing, enrollment, benefit and coverage, and grievance procedures under all Medicare Advantage'] are completely preempted . . . ." (*See* Response to Plaintiffs' Motion to Remand, ¶2.12). This is an extremely broad leap by Pacificare, and one that is not supported by Eleventh Circuit precedent.

The cases relied on by Pacificare even demonstrate the limited applicability of the MMA's "Establishment of standards" pre-emption provision at issue. In *First Med. Health Plan, Inc. v. Vega*, 406 F. Supp. 2d 150 (D.P.R. 2005), First Medical sought a TRO against ASES (a Puerto Rican administration) to enjoin First Medical from disqualifying it as a participant in ASES's Medicare Advantage plan. ASES initially requested proposals from Medicare Advantage organizations interested in providing access to Medicare Advantage coverage in the area. First Medical submitted a proposal but later received notice from ASES that a Puerto Rican law precluded it from contracting

with First Medical on the basis that First Medical had an economic interest in other healthcare facilities. As support for its TRO, First Medical relied on 42 U.S.C. §1395w27(d)(4) and 42 U.S.C. §1320a-7(b)(8) and argued that it pre-empted Puerto Rican state law. *See id.* at 153-54. The court agreed with First Medical and granted its request. Relying on the "establishment of other standards" pre-emption provision, the court held that Puerto Rico's attempt to establish standards relating to Medicare Advantage plans was pre-empted by the Medicare Act/MMA.

It is worth mentioning that, contrary to Pacificare's assertions, the court in *Vegas* did not hold, nor did it even remotely suggest, that the Medicare Act and its recent amendments pre-empt a private, state cause of action related to Medicare Advantage plans. Moreover, unlike *Vega*, the present action does not involve a state's attempt to establish standards relating to Medicare Advantage plans. Nor are the instant Plaintiffs acting on behalf of a state or seeking to establish state standards or regulations relating to Medicare Advantage Plans like Puerto Rico in *Vegas*. Consequently, the "establishment of other standards" pre-emption provision cited by Pacificare, and the ensuing case law, do not pre-empt the Plaintiffs' private causes of action against Pacificare.

**B.    The Plaintiffs' private, state law claims are not those contemplated by the Medicare Act.**

Even assuming for the sake of argument that the Medicare Act/MMA does, in fact, pre-empt private causes of action related to marketing, enrollment, benefit and coverage, and grievance procedures under Medicare Advantage Plans, it does not pre-empt the Plaintiffs' causes of action in this matter, which are unrelated. Despite Pacificare's attempt to mischaracterize the Plaintiffs' claims to the contrary, the Plaintiffs' lawsuit is not based on claims of violations of Medicare's marketing or enrollment guidelines. Nor do the Plaintiffs seek an administrative adjudication of a grievance or a dispute over the benefits and coverages provided by Medicare Care. The Plaintiffs

are not seeking an appeal of a dispute, benefit or coverage either. In short, because the Plaintiffs' claims can be resolved totally outside the confines of the Medicare Act/MMA, there is no pre-emption here.

To circumvent this reality, Pacificare initially argues that Plaintiffs' fraud claims "directly implicate[] standards set forth under the Medicare Act/MMA for enrollment, including Pacificare's marketing efforts and materials." (*See* Pacificare's Response to Plaintiffs' Motion to Remand, ¶2.20). As support for this argument, Pacificare cites 42 U.S.C. §1395w-101(b)(1)(A), (B)(vi) and 42 C.F.R. §423.50. However, these sections do not even apply to the plan at issue in this case – the Medicare Advantage plan. Rather, these provisions relate to Voluntary Prescription Drug plans (Part D plans), which are clearly not at issue here. Pacificare can point to no binding authority that these provisions relate to marketing and enrollment guidelines for *Medicare Advantage Plans*.

Even if the provisions at issue apply to marketing and enrollment guidelines for Medicare Advantage Plans (which they do not), the Plaintiffs' claims in the case at bar do not "implicate standards set forth under the Medicare Act/MMA", as Pacificare contends. As previously mentioned, the Plaintiffs are not pursuing claims based upon Pacificare's violation of Medicare marketing or enrollment guidelines. At its core, this lawsuit seeks private, state law causes of action based upon fraudulent misrepresentations and other tortious conduct by the Defendants, which resulted in the Plaintiffs' enrolling in Pacificare's Medicare Advantage plan. This enrollment stripped the Plaintiffs from their regular Medicare and Medicaid without their knowledge. This, in turn, caused them to incur medical expenses when they continued to treat with their usual, Medicare-accepting doctors, who were outside of the Pacificare network. Pacificare wrongfully characterizes these incidents as Medicare "coverage determinations", like those addressed administratively

between a Medicare recipient and the CMS when a recipient believes Medicare or a provider have wrongfully denied a claim. (*See* Pacificare's Response to Plaintiffs' Motion to Remand, ¶¶2.21, 2.25). Here, the Plaintiffs have never alleged that Medicare wrongfully denied their claims. Nor are they asking the CMS to resolve any claim that they believe Pacificare should have paid under the plan.

The Plaintiffs are alleging, instead, that the Defendants misrepresented the product into which they were enrolled. The Plaintiffs also contend that the Defendants suppressed the fact that they were actually dis-enrolling the Plaintiffs from their Medicare coverage and enrolling them on Pacificare's Medicare Advantage plan. This conduct caused the Plaintiffs to incur medical bills, go without healthcare and suffer personal injury. The claim denial procedures promulgated by the Medicare Act do not relate to these situations.

    **C.**    **Pacificare's reliance in *Uhm v. Humana, Inc.* is misplaced.**

Pacificare presents as its sole authority an unpublished opinion from the Western District of Washington, *Uhm v. Humana, Inc.*, 2006 WL 1587443 (W.D. Wash.), for the faulty premise that Plaintiffs' claims are pre-empted by federal law. It contends that "Plaintiffs' claims in this matter rely on similar allegations of misrepresentation in marketing" as those set forth in *Uhm*. (*See* Pacificare's response to Plaintiffs' Motion to Remand, ¶2.17). The *Uhm* decision is distinguishable on several grounds. First, *Uhm* involved a Medicare Part D Prescription Drug plan. *See id.* at 1. As shown above, the Part D prescription drug plan is not at issue in this lawsuit.

Secondly, and perhaps more critical, the plaintiffs in *Uhm* asserted fraud claims against the defendants based on misrepresentations in their Part D marketing materials. *Id*. The court in *Uhm* held that the MMA, as it relates to Part D Prescription Drug plans, "establish[es] comprehensive

standards for marketing materials and they provide a mandatory CMS approval process before those marketing materials can be used." *Id*. at 2. The court noted that the relevant statutory provisions were designed to "prohibit marketing materials that 'could mislead or confuse Medicare beneficiaries, or misrepresent the Part D sponsor or its Part D plan.'" *Id*. at 2 (*quoting* 42 C.F.R. §423.50(f)(iv)). As such, the *Uhm* court held that the plaintiffs' "fraud and fraud in the inducement claims [were] preempted ***to the extent*** that they rel[ied] on defendants' marketing materials." *Id*. (emphasis added).

The court's holding in *Uhm* is not as broad as Pacificare would have this Court believe. Notably, the court held that the fraud claims were pre-empted *to the extent* they involved the defendants' marketing materials. Here, even if the Part D prescription drug plan was at issue, the Plaintiffs' claims are not based on Medicare marketing materials or guidelines established by the CMS. Even if they were, there has been no showing by Pacificare, other than a conclusory statement, as to the specific marketing and selling guidelines that have been violated. Pacificare has failed to show how the specific fraud claims in the complaint are, in actuality, alleged violations of the marketing guidelines at issue. Because Plaintiffs' fraud claims in this matter do not involve reliance on marketing materials, the decision in *Uhm* is not authoritative, even if it were binding Eleventh Circuit precedent, which it is not.

Moreover, the plaintiffs in *Uhm* asserted breach of contract claims against the defendants for failing to provide coverage for their prescription drugs. The court concluded that these claims amounted to "coverage determinations" and were, therefore, pre-empted by the coverage determination procedures and appeals process established by the MMA as it relates to Part D plans. *Id*. at 3. However, as discussed above, Plaintiffs in this matter have not asserted claims for breach

of contract. Nor have they asserted "coverage determination" claims. Again, the *Uhm* case is wholly distinguishable from the case at bar.

Lastly, even if this Court rules that complete pre-emption exists, the Plaintiffs will be left without a remedy. Pacificare claims that the "harshness of preemption in this instance is mediated by the availability of administrative remedies." (See Response to Plaintiffs' Motion to Remand, ¶2.25). There are no remedies here. Plaintiffs have not asked for a coverage determination in their Complaint. The Plaintiffs are not seeking an adjudication of coverages and benefits. They are not seeking a grievance or a dispute to be remedied by the CMS. Nor are they seeking an appeal of any decision by Pacificare or the CMS. In short, there is no remedy available through Pacificare or the CMS to resolve the Plaintiffs' dispute, in theory or in practice. Consequently, the Medicare Act/MMA does not completely pre-empt the Plaintiffs' claims in this lawsuit.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs respectfully request this Court to grant the Plaintiffs' Motion to Remand and reward costs and fees as requested herein.

                **Plaintiffs, by Counsel**

                /s/ Rodney E. Miller
                **Robert G. Methvin, Jr. (MET009)**
                **J. Matthew Stephens (STE153)**
                **Rodney E. Miller (MIL126)**

**OF COUNSEL:**
**MCCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone: (205) 939- 0199
Facsimile: (205) 939-0399

                /s/ L. Cooper Rutland

                                          L. Cooper Rutland, Jr. (RUT010)

**OF COUNSEL:**
**RUTLAND & BRASWELL, L.L.C.**
208 N. Prairie Street
P.O. Box 551
Union Springs, AL 36089

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **ROMIE HARRIS, JR., AMY HARRIS,** | * |
| **RUBY FRANCIS FOWLER, MARY LOIS** | * |
| **GREEN, JAMES THOMAS, LULA THOMAS** | * |
| **and JANIE BUFORD,** | * |
| | * |
| Plaintiffs, | * |
| | * CIVIL ACTION NO.: 2:06-CV-956-ID |
| v. | * |
| | * |
| **PACIFICARE LIFE AND HEALTH** | * |
| **INSURANCE COMPANY, ROBERT D. BELL,** | * |
| **ELIZABETH R. CLARK, WILLIE C. TILLIS,** | * |
| **and Fictitious Defendants A through Z,** | * |
| | * |
| Defendants. | * |

### CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2006, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Philip H. Butler
George B. Harris
William C. McGowin
**BRADLEY, ARANT, ROSE & WHITE, LLP**
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone:     (334) 956-7700

I hereby certify that I have mailed the document by United States Postal Service to the following non-CM/ECF participants:

Paula Denney
John K. Edwards
Cedric D. Scott
**JACKSON WALKER, LLP**
1401 McKinney, Suite 1900
Houston, TX 77010
Telephone:    (713) 752-4200

Willie C. Tillis
306 Mullins Street
Opp, AL 36467

Robert D. Bell
208 N. Cleveland Street
Albany, GA 31701

Elizabeth Clark
505 Wisteria Palce
Birmingham, AL 35216

/s/ Rodney E. Miller
**Rodney E. Miller  (MIL126)**
**MCCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, AL 35205