# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| ROMIE HARRIS, JR., AMY HARRIS, RUBY FRANCIS FOWLER, MARY LOIS GREEN, JAMES THOMAS, LULA THOMAS and JANIE BUFORD,<br><br>     Plaintiffs,<br><br>v.<br><br>PACIFICARE LIFE AND HEALTH INSURANCE COMPANY, ROBERT D. BELL, ELIZABETH R. CLARK, WILLIE C. TILLIS, and Fictitious Defendants A through Z, those corporations, partnerships, LLC's, individuals or other entities who conduct contributed to the damages claimed herein whose names are not yet known to Plaintiffs but will be substituted by amendment when ascertained,<br><br>     Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br><br>CIVIL ACTION NO. 2:06-CV-00956 |

## DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

COMES NOW Defendant PacifiCare Life and Health Insurance Company ("PacifiCare"), through counsel, and files this Notice of Supplemental Authority in Opposition to Plaintiffs' Motion to Remand, respectfully showing the Court as follows:

### I.     BACKGROUND

1.1     Just last week, on August 7, 2007, the United States District Court for the Southern District of Alabama, Northern Division, issued its Order denying Plaintiffs' Motion to Remand in a lawsuit styled *Della Dial, et. al. v. Healthspring of Alabama, Inc., and Marcus Trotter*, Civil Action No. 2:07-0412-KD-C (hereinafter the "Order"). A true and correct copy of the Order is attached hereto as Exhibit A.

1.2    In its Order, the *Dial* Court provides a detailed analysis of the identical issue raised by Plaintiffs Harris, Fowler, Green, Thomas, and Buford (collectively the "Plaintiffs") in their Motion to Remand and addressed by PacifiCare in its Response -- whether the Medicare Act, 42 U.S.C. § 1395w-21 – w-28, as amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA) (hereinafter the "Medicare Act/MMA"), completely preempts state law claims arising from the alleged marketing, solicitation, and enrollment of Plaintiffs in a Medicare + Choice (Medicare Part C) plan. *See* Exh. A at pp. 2-3.

1.3    Plaintiffs' claims herein are substantially similar, if not *identical*, to those causes of action analyzed by the *Dial* Court in its Order: (1) fraud; (2) unjust enrichment; (3) negligent infliction of emotional distress; (4) wantonness; and (5) outrage.[1]  Plaintiffs' Motion to Remand at ¶ 1.  Moreover, like the defendants in *Dial*, PacifiCare contends that all of Plaintiffs' claims relate to standards established under the Medicare Act/MMA, and thus are superseded and preempted pursuant to 42 U.S.C. § 1395w-26(b)(3).  *See* PacifiCare Life and Health Insurance Company's Memorandum of Law in Opposition to Plaintiffs' Motion to Remand (hereinafter "PacifiCare's Memorandum of Law"), pp. 4-5 at ¶¶ 2.6-2.12; *see also* Exh. A. at p. 6.

1.4    The *Dial* Court held that the Medicare Act/MMA completely preempted numerous state law claims related to the marketing, solicitation and enrollment of the *Dial* plaintiffs, and exercised supplemental jurisdiction over any remaining claims.  Exh. A at p. 18. Accordingly, the Court denied the *Dial* plaintiffs' motion to remand and properly exercised federal jurisdiction over the case.  *Id.*

---

[1]    The plaintiffs in *Dial* alleged the following causes of action (identical claims as presented here are italicized):  (1) breach of contract; (2) *fraud* pursuant to Code of Alabama § 6-5-101; (3) fraud by suppression pursuant to Code of Alabama § 6-5-102; (4) deceit and fraudulent deceit pursuant to Code of Alabama §§ 6-5-103 and 6-5-104; (5) negligent, reckless, and/or wanton failure to adequately procure and/or maintain insurance; (6) *negligence and wantonness*; (7) negligent hiring, training and supervision; (8) conspiracy to defraud; (9) *unjust enrichment/constructive trust*; (10) breach of implied covenant and/or duty of good faith and fair dealing; (11) breach of fiduciary duties; and (12) *intentional, wanton, reckless and/or negligent infliction of emotional distress*. *See* Exh. A at p. 2 (emphasis added).

1.5     The factual background and causes of action alleged by Plaintiffs in this case are nearly identical in nature to those facts and claims alleged in *Dial* and, accordingly, the *Dial* Court's analysis of those facts and claims is highly instructive here.  PacifiCare urges the Court to adopt the same analysis applied by the *Dial* Court and thus exercise federal jurisdiction over Plaintiffs' claims.

## II.    ARGUMENT AND AUTHORITIES

2.1     To begin its analysis, the *Dial* Court recognized that "in order to ascertain whether plaintiffs' state law claims fall under the narrow exception of complete preemption, the court must decide whether 'Congress has so fully legislated an area of law such that a plaintiff's state law claims filed in state court are necessarily federal in character.'"  Exh. A. at p. 5 (*citing Ervast v. Flexible Products, Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003) (citation omitted); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. at 63-65 (1987)).  In analyzing whether Congress intended to preempt the *Dial* plaintiffs' claims under the statutory framework of the Medicare Act/MMA, the *Dial* Court noted the importance of the Congressional enactment of Section 232 of the MMA in 2003, entitled "Relation to State Laws":

> The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage (MA)] plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3) (2006).  The Act's language, along with strong legislative history supporting a framework of broad preemption, led the *Dial* Court to conclude that Congress intended the Medicare Act/MMA's preemption provision "to preempt state law applicable to areas for which the MMA has established regulations or standards."  Exh. A. at p. 12.

2.2     The *Dial* Court also relied on two federal cases directly addressing whether the Medicare Act/MMA completely preempts certain state law claims:  (1) *Uhm v. Humana, Inc.*, No. 06-0815, 2006 WL 1587443 (W.D. Wash., June 2, 2006); and (2) *First Medical Health*

*Plan, Inc. v. Vega-Ramos*, 479 F.3d 46 (1st Cir. 2007). Notably, in its Memorandum of Law, PacifiCare pointed the Court to *both* of these cases as persuasive authority in determining complete preemption of state law claims under the Medicare Act/MMA.

2.3    In its Memorandum of Law, PacifiCare fully analyzed the *Uhm* case.. *See* Pacificare's Memorandum of Law, pp. 10-11 at ¶ 2.17. The *Uhm* Court held that the Medicare Act/MMA completely preempted state law claims relating to alleged fraudulent enrollment or misrepresentations in the marketing of Medicare Part D Prescription Drug Plans. *See* PacifiCare's Memorandum of Law, Exh. B at *3. As the *Dial* Court points out in its Order, the preemption language at issue in *Uhm* is identical to the broad preemption provision related to Medicare Part C benefits. Exh. A at p. 12. Because Plaintiffs' claims here rely on similar allegations of misrepresentation in marketing, and even assert some identical causes of action as in *Uhm*, this Court, like the *Dial* Court, should find *Uhm* persuasive in analyzing the preemption issue.

2.4    The *Dial* Court also examined the First Circuit's recent decision in *First Medical Health Plan, Inc. v. Vega-Ramos*, 479 F.3d 46 (1st Cir. 2007) in determining complete preemption under the Medicare Act/MMA. A true and correct copy of the *First Medical* decision is attached hereto as Exhibit B. While the facts in *First Medical* are somewhat different from the case at hand, the *Dial* Court found the First Circuit's analysis of the Medicare Act/MMA's preemption provision, 42 U.S.C. § 1395w-26(b)(3), very persuasive:

> The federal preemption provision relied on by First Medical states that "the standards established" under federal law for Medicare Advantage plans operating under Medicare Part C shall "supersede any State law or regulation (other than State licensing laws or State laws related to plan solvency)." 42 U.S.C. § 1395w-26(b)(3). The legislative history of this provision clarified that "the MA is a federal program operated under Federal rules and that State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." H. Conf. Rep. 108-391 at 557, reprinted in 2003 U.S.C.C.A.N. at 1926
> …

As mentioned above, Congress' purpose in enacting § 1395w-26(b)(3) was to protect the purely federal nature of Medicare Advantage plans operating under Medicare….

Exh. A at p. 11, quoting *First Medical*, 479 F.3d at 51-52 (some internal citations, quotations and footnotes omitted); Exh. B. at 51-52.  In fact, as the *Dial* Court explicitly mentions in its Order, the *First Medical* decision "implies that had Medicare Platino [the insurance plan at issue in *First Medical*] been a Medicare program instead of a Medicaid program, preemption would have applied." Exh. A. at p. 11.[2]

2.5    Relying on *Uhm* and *First Medical*, along with the clear intent of Congress contained in the Medicare Act/MMA's legislative history, the *Dial* Court held that the preemption provision of the Medicare Act/MMA was intended to preempt state law applicable to areas for which the MMA has established regulations or standards.  Exh. A. at p. 12.

2.6    To determine exactly what areas under the Medicare Act/MMA may be preempted by Congress, the *Dial* Court noted the numerous regulations governing Medicare Part C plans, including 42 C.F.R. § 422.80 relating to marketing materials used by Medicare Advantage ("MA") organizations, and 42 C.F.R. § 422.562 setting forth various responsibilities for MA plans and the rights of MA enrollees.  Exh. A at pp. 12-15.  In addition to the above-referenced regulations, PacifiCare's Memorandum of Law examined the Medicare Act/MMA's vast regulatory framework, as monitored and enforced by CMS, by citing 42 C.F.R. § 423.50 related to the review and approval of all MA plan advertisements, and 42 C.F.R. § 423.32 regulating enrollment procedures into MA programs.  *See* PacifiCare's Memorandum of Law, pp. 6-7 at ¶¶ 2.9-2.10.  Based on this extensive framework of federal regulations and procedures,

---

[2]    It is interesting to note that in Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion to Remand (hereinafter "Plaintiffs' Reply"), Plaintiffs analyzed the *First Medical* case, strenuously arguing that "the court in *Vegas* [sic] did not hold, nor did it even remotely suggest, that the Medicare Act and its recent amendments pre-empt a private, state cause of action related to Medicare Advantage plans." Clearly, Plaintiffs argument fails in light of the *Dial* Court's reliance on *First Medical* in holding that the *Dial* plaintiffs' private state law causes of action were, in fact, completely preempted by the Medicare Act/MMA.

the *Dial* Court found that "at least some of plaintiffs' claims regardless of how they are plead arise under an area which the Congress intended for CMS to create standards and regulate and thus are preempted." Exh. A. at p. 17.

2.7    The *Dial* Court summarized its legal analysis by holding that "***plaintiffs' causes of action based upon defendants' meeting with the plaintiffs, soliciting their enrollment, and making representations as to the quality and scope of benefits and coverage, and as to plaintiffs' ability to continue treatment with their doctors and hospitals, fall within areas which Congress intended to regulate through the MMA, and thus are preempted by federal law***." Exh. A at p. 18 (emphasis added). In this case, Plaintiffs' causes of action against PacifiCare stem from similar, and in some cases *identical*, factual claims as those found by the *Dial* Court to be preempted. Plaintiffs affirmatively allege that PacifiCare contacted them, misrepresented the SecureHorizons plan, and disenrolled them from their Medicare coverage. *See* Plaintiffs' Complaint at ¶¶ 14-16. As a result, Plaintiffs claim that they could "no longer receive vital healthcare from their longtime physicians and other healthcare specialists." *Id.* at ¶ 18. Clearly, Plaintiffs' factual allegations give rise to causes of action that, according to the Court in *Dial*, "Congress intended to regulate through the MMA," and thus Plaintiffs' claims are completely preempted by federal law. *See* Exh. A at p. 18.

### III.    CONCLUSION

This Court should apply the same analysis used by the *Dial* Court in its recent order, including reliance on *Uhm* and *First Medical*, in holding that the Medicare Act/MMA completely preempts Plaintiffs' state law claims, and subsequently deny Plaintiffs' Motion to Remand.

Respectfully submitted,

/s/ William C. McGowin
Philip H. Butler (BUT007)
George B. Harris (HAR138)
William C. McGowin (MCG040)

**OF COUNSEL**

**BRADLEY ARANT ROSE & WHITE LLP**
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile:  (334) 956-7701

Paula Denney
Texas State Bar No. 05746950
John K. Edwards
Texas State Bar No. 24002040
**JACKSON WALKER L.L.P.**
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile:  (713) 752-4221

**ATTORNEYS FOR DEFENDANT
PACIFICARE LIFE AND HEALTH
INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert G. Methvin, Jr., Esq.
J. Matthew Stephens, Esq.
Rodney E. Miller, Esq.
**MCCALLUM, METHVIN & TERRELL, P.C.**
The Highland Building
2201 Arlington Avenue South
Birmingham, AL  35205

L. Cooper Rutland, Jr., Esq.
**RUTLAND & BRASWELL, L.L.C.**
208 N. Prairie Street
P. O. Box 551
Union Springs, AL 36089

*ATTORNEYS FOR PLAINTIFF*

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Robert D. Bell
Route 1, Box 995
Shellman, GA 39886

/s/ William C. McGowin
Of Counsel

# Exhibit A

IN THE UNITED STATES DISTRICT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DELLA DIAL, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07-0412-KD-C |
| | ) | |
| HEALTHSPRING OF ALABAMA, INC., | ) | |
| and MARCUS TROTTER, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on the motion to remand, supporting brief and reply, filed

by plaintiffs Della Dial, A.C. Johnson, Nancy Norfleet, Constance Taylor, Abraham

Washington, Georgia M. Woods, and Laura B. Washington (docs. 6, 7, 13), the response and

sur-reply filed by defendants HealthSpring of Alabama, Inc., (docs. 11, 16),[1] and Marcus

Trotter's joinder in HealthSpring's response (doc. 12).  Upon consideration of the pleadings and

for the reasons set forth herein, the motion to remand (doc. 6) is **DENIED** and the court shall

exercise supplemental jurisdiction over plaintiffs' state law claims.

**I.     Background**

In 2005, agents or representatives of HealthSpring contacted plaintiffs and solicited their

enrollment in a managed health care plan entitled "Seniors First".  Prior to the time of their

enrollment, the plaintiffs had been covered by Medicare Parts A and B, and were all living on

fixed monthly incomes either receiving Social Security retirement benefits or were disabled.

Plaintiffs now assert that the benefits and coverage under the Seniors First plan were not as

---

[1] On July 16, 2007, defendants filed a motion for leave to file their sur-reply brief (doc. 16).  Plaintiffs did not file a response to the motion.  The court having considered the motion and sur-reply brief, finds that the motion is due to be and hereby is **GRANTED**.

represented by the HealthSpring Seniors First agents and resulted in the plaintiffs incurring additional expense when obtaining healthcare. Additionally, plaintiffs learned they could not unilaterally cancel their coverage or they would lose all coverage.

On May 1, 2007, plaintiffs filed their complaint in the Circuit Court of Perry County, Alabama and brought claims against the defendants for their actions in contacting plaintiffs and allegedly misrepresenting HealthSpring's Seniors First Medicare Advantage product, dis-enrolling plaintiffs from their existing Medicare coverage, redirecting Medicare premiums to HealthSpring and restricting plaintiffs' Medicare coverage and benefits. Specifically, plaintiffs allege breach of contract (Count I), fraud pursuant to Code of Alabama § 6-5-101 (Count II), fraud by suppression pursuant to Code of Alabama § 6-5-102 (Count III), deceit and fraudulent deceit pursuant to Code of Alabama §§ 6-5-103 and 6-5-104 (Count IV), negligent, reckless, and/or wanton failure to adequately procure and/or maintain insurance (Count V), negligence and wantonness (Count VI), negligent hiring, training and supervision (Count VII), conspiracy to defraud (Count VIII), unjust enrichment/constructive trust (Count IX), breach of implied covenant and/or duty of good faith and fair dealing (Count X), breach of fiduciary duties (Count XI), and intentional, wanton, reckless and/or negligent infliction of emotional distress (Count XII). (Doc. 1-2, p. 12-33) Plaintiffs seek compensatory and punitive damages.

In the complaint, plaintiffs include the following statement:

> 5.     The Plaintiffs make no claims pursuant to any Federal Law, nor do the Plaintiffs make any claims which would give rise to Federal jurisdiction. Plaintiffs' claims arise solely from state law.

(Doc. 1-2, p. 12-33).

Defendants removed to this court on grounds that plaintiffs' claims for relief arise under the laws of the United States, specifically the Medicare Act, 42 U.S.C. § 1395w-21 thru w-28, as

amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003

(MMA).  Defendants argue that plaintiffs' state law claims are superseded and preempted by the

MMA pursuant to 42 U.S.C. § 1395w-26(b)(3) (2006).

Plaintiffs move to remand the case to the Circuit Court of Perry County, Alabama on

grounds that defendants have waived their right to remove this action and have not met their

burden of establishing a substantial question of federal law.  In opposition, defendants argue that

they have not expressed a clear and unequivocal intent to litigate in state court and thus, have not

waived their right to remove.  Defendants also argue that provisions of the MMA and its

implementing regulations completely preempt all of plaintiffs claims and thus the motion to

remand should be denied.

## II.     Analysis

Federal courts are courts of limited jurisdiction and only have the power to hear cases

authorized by the Constitution or by an Act of Congress. See Kokkonen v. Guardian Life Ins.

Co. of Am., 511 U.S. 375, 377 (1994).  Therefore, a removing defendant must establish the

propriety of removal under 28 U.S.C. § 1441 and bears the burden of establishing the existence

of federal jurisdiction. Leonard v. Enterprise Rent-a-Car, 279 F.3d 967, 972 (11th Cir. 2002) ("A

removing defendant bears the burden of proving proper federal jurisdiction."); Fowler v. Safeco

Ins. Co., 915 F. 2d 616, 617 (11th Cir. 1990).  Also, as a grant of subject matter jurisdiction,

"removal jurisdiction raises significant federalism concerns,[and] federal courts are directed to

construe removal statutes strictly" and resolve all doubts about jurisdiction "in favor of remand

to state court." University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th

Cir.1999); see Williams v. AFC Enterprises, Inc., 389 F.3d 1185 (11th Cir. 2004); Burns v.

Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("removal statutes are construed narrowly;

3

where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand").

### Federal Question Jurisdiction

In order for removal to be proper under 28 U.S.C. § 1441, the action removed must be one which originally could have been filed in the district court because it arose under the Constitution, treaties, or laws of the United States, see 28 U.S.C. § 1331[2], i.e., federal question jurisdiction, or there must be complete diversity of citizenship between the defendants.  Section 28 U.S.C. § 1441 provides, in pertinent part:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. §1441(b).

The Eleventh Circuit has established that "the question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida, 999 F. 2d 503, 506-507 (11th Cir. 1993) (citation omitted). When considering removal based upon federal question jurisdiction, the court must look to the complaint to determine whether relief can be obtained under a federal statute and not to the defendants' assertion that a federal claim exists.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425 (1987) (to ascertain the existence of a federal question, the courts should apply the "well-pleaded complaint" rule which requires review of the face of the

---

[2] The section provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

complaint rather than looking to the defenses); Hansard v. Forsyth County, Georgia, 191 Fed.

Appx. 844, 846 (11th Cir. 2006) (finding that plaintiffs' claim of violation of their rights under

the Fifth and Fourteenth Amendments did not "state a federal claim because the Constitution did

not create the cause of action alleged" and that the court must review "the complaint to

determine what law, state or federal, created any of their claims for relief."); Newton v. Capital

Assurance Co., 245 F.3d 1306, 1309 (11th Cir. 2001) ("The federal cause of action or question of

federal law must be apparent from the face of the well-pleaded complaint and not from a defense

or anticipated defense.") (citation omitted).

However, two exceptions to the "well-pleaded complaint" rule exist: When a federal

statute expressly provides for removal even where the complaint only asserts state law claims

and when "a federal statute wholly displaces the state-law cause of action through complete

preemption."[3] Beneficial National Bank v. Anderson, 539 U.S. 1, 6, 8, 123 S. Ct. 2058 (2003);

Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 60, 107 S. Ct. 1542, 1544 (1987) (complete

preemption existed because the "state common law claims are not only pre-empted by ERISA

but also displaced by ERISA's civil enforcement provision.")  In order to ascertain whether

plaintiffs' state law claims fall under the narrow exception of complete preemption, the court

must decide whether "Congress has so fully legislated an area of law such that a plaintiff's state

law claims filed in state court are 'necessarily federal in character.'" Ervast v. Flexible Products,

Co., 346 F. 3d 1007, 1012 (11th Cir. 2003) (citation omitted); Metropolitan Life Ins. Co. v.

Taylor, 481 U.S. at 63-65, 107 S. Ct. at 1546-1457 (an exception exists in cases of "complete

---

[3] As a footnote to the latter, the Supreme Court noted that "[o]f course, a state claim can
also be removed through the use of the supplemental jurisdiction statute, 28 U.S.C. § 1367(a),
provided that another claim in the complaint is removable." Beneficial Nat. Bank v. Anderson,
539 U.S. at 8, n. 3, 123 S.Ct. at 2063 n.3 (2003).

preemption," where Congress so "completely pre-empt[s] a particular area that any civil

complaint ... is necessarily federal in character" such that the statute "converts an ordinary state

common-law complaint into one stating a federal claim for purposes of the well-pleaded

complaint rule.")

In the Notice of Removal, defendants argue that plaintiffs' state law claims arise under

the laws of the United States, specifically the Medicare Act, 42 U.S.C. § 1395w-21 thru w-28, as

amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003

(MMA), Pub. L. No. 108-173, 117 Stat. 2066.  Defendants argue that the claims all relate to

standards established under the MMA as amended and are thus superseded and preempted

pursuant to 42 U.S.C. § 1395w-26(b)(3) (2006).[4]  Defendants also assert that all of plaintiffs'

allegations "relate to the extent or quality of benefits promised or received and claims paid or

denied, and thus plaintiffs in effect complain of benefit or coverage determination governed" by

the MMA.

In the motion to remand, brief and supplement, plaintiffs argue that no issue of federal

law is raised on the face of their complaint, that they bring only state law claims and have sought

no relief under federal law, and therefore, there is no federal question jurisdiction.  Plaintiffs also

argue that their state law claims are not completely preempted by the MMA because the

preemption provision applies only to preclude a states's attempt to establish standards relating to

---

[4] The section entitled "Relation to State laws", sets forth as follows:

The standards established under this part shall supersede any State law or
regulation (other than State licensing laws or State laws relating to plan solvency)
with respect to [Medicare Advantage (MA)] plans which are offered by MA
organizations under this part.

42 U.S.C. § 1395w-26(b)(3).

or regulating Medicare Advantage plans.[5]  Plaintiffs also argue that its claims are not related to

marketing, enrollment, benefit and coverage, and grievance procedures under the Medicare

Advantage plan, but instead are claims sounding in tort based upon fraudulent misrepresentation

which can be resolved outside of the MMA.  Plaintiffs conclude that their claims are not claims

regarding coverage determinations, denial of coverage, the organizational compliance or

solvency standards, taxes or state licensure requirements for defendant HealthSpring, which

would be preempted.[6]

Defendants respond that plaintiffs' claims all relate to standards established under the

MMA for Medicare Advantage plans offered by private insurers and are completely preempted

by 42 U.S.C. § 1395w-26(b)(3) of the MMA.  Section 1395w-26(b)(3), entitled "Relation to

State laws" provides that "[t]he standards established under this part shall supersede any State

law or regulation (other than State licensing laws or State laws relating to plan solvency) with

---

[5] Plaintiffs rely upon Burke v. Humana Ins. Co., 1995 WL 841678, *2 (M.D. Ala. 1995)
and Grace v. Interstate Life & Accident Ins., Co., 916 F. Supp. 1185, 1191 (M.D. Ala. 1996).
However, both cases were decided before the December 2003 amendments to the Medicare Act
became effective.  In Burke, the district court stated "the defendants have not pointed to any
congressional intent to make state-law claims falling within the scope of Medicare, Medicaid,
and laws providing for Medigap policies removable to federal court" and that "[w]ith this
conclusion, however, this court has not held that plaintiffs' state-law fraud claims are not
"pre-empted" by Medicare, Medicaid, and the laws relating to Medigap policies. This court has
merely held that there is not such "complete preemption" as would support removal to federal
court."  Burke, at *3.  Also, in Grace, the defendants did not contend that the plaintiff's claims
were preempted by federal law. 916 F. Supp. at 1191.

[6] Plaintiffs also argue that the exact allegations were filed by "Brown, L. Phillips, Moton
and B. Phillips in Wilcox County, Alabama against the defendants" and other agents but those
cases were not removed by defendants, and thus "[i]t is safe to say by HealthSpring not
removing the earlier filed cases, the Plaintiffs in this case have not invoked federal question
jurisdiction." (Doc. 7, p. 7).  Plaintiffs provide no evidentiary support or case law to establish
that a defendant's litigation decision in one case is evidence of the lack of federal question
jurisdiction in another case.  This argument is without probative value or merit.

respect to MA plans which are offered by MA organizations under this part." Section 232 of the

MMA codified at 42 U.S.C. § 1395w-26(b)(3). Defendants argue that with the enactment of

Section 232 in 2003, Congress amended 42 U.S.C. § 1395w-26(b)(3) to establish broader

preemption provisions and that this amendment and the legislative history demonstrate that

Congress intended the MMA preemption to be broad in scope. Defendants point out that this

expansive language was included by the Centers for Medicare and Medicaid Services (CMS), a

division of the Department of Health and Human Services, in its implementing regulations[7] for

Medicare Advantage plans which includes regulations regarding marketing, solicitation,

enrollment and election, complaints by a beneficiary related to disputes concerning services,

benefits and coverage, grievances and appeals.[8] Defendants argue that any complaint in these

areas, although couched in terms of state law claims, fall within the purview of federal standards

established under the MMA and thus are completely preempted by federal law.

Only state law causes of action appear on the face of the complaint. Plaintiffs base their

claims upon defendants' act of meeting with the plaintiffs, soliciting their "enrollment in a

managed healthcare plan", and representing to plaintiffs that HealthSpring's plan was "better

than Medicare", that "they would receive free prescription drugs and health care", that the plan

was "endorsed by Medicare" and that plaintiffs could "continue treatment with their regular

---

[7] "Federal preemption of State law. The standards established under this part supersede
any State law or regulation (other than State licensing laws or State laws relating to plan
solvency) with respect to the MA plans that are offered by MA organizations." 42 C.F.R. §
422.402.

[8] Defendants also argue that the MMA provides for a grievance process for plan
beneficiaries to resolve disputes concerning any aspect of the operations, activities or behavior
of a Medicare Advantage plan provider and that review in the district court occurs only after
exhaustion of this mandatory procedure.

physicians". (Doc.1-2, p. 14-16, complaint). Plaintiffs claim that defendants made the following

material representations regarding the Seniors First program:

1. That the Plaintiffs' regular physicians recommended and/or endorsed the "Seniors First" healthcare plan and would be part of the plan as a provider;

2. That the Plaintiffs would be covered by the hospital [where] they regularly were treated;

3. That the Plaintiffs would be covered by the physicians [by whom] they regularly were treated;

4. That the "Seniors First" program would cover the Plaintiffs' medical expenses;

5. That the "Seniors First" program would fully pay the Plaintiffs' prescription expenses.

(Doc. 1-2, p. 17, complaint). Plaintiffs assert that they have been duped by defendants' bait and

switch tactic and thus defendants have engaged in fraudulent activity which resulted in damages

to the plaintiffs. (Id., p. 17-18).

Among the counts, plaintiffs claim damages for fraud pursuant (Count II), fraud by

suppression (Count III), and deceit and fraudulent deceit (Count IV). In, at least, each of these

counts, a coverage issue appears to be presented. In Count II for fraud, after listing specific acts

on the part of defendants, plaintiffs assert that fraud was committed "in that said Defendants

misrepresented the terms of coverage, with the intent to deceive." (Id., p. 21). In Count III for

fraud by suppression, plaintiffs allege that the defendants had a duty to disclose but instead

"concealed and/or withheld [] material facts concerning medical coverage procured and

underwritten through Defendants." (Id., p. 23). In Count IV for deceit and fraudulent deceit,

plaintiffs allege that defendants "misrepresented the terms of the insurance policies". (Id., p. 25).

At this time, the court is only aware of one Circuit Court to address the preemptive effect

of 42 U.S.C. § 1395w-26(b)(3), did so in the context of whether the section expressly preempted

application of Puerto Rico Law 72 which had been interpreted to prohibit a Medicare Advantage

plan from participating in Medicare Platino. <u>First Medical Health Plan, Inc. v. Vega-Ramos,</u> 479

F.3d 46 (1st Cir, 2007). [9] The decision in <u>First Medical</u> turned on whether the benefits were

provided through Medicaid or Medicare. Vega-Ramos argued, and the First Circuit agreed, that

Medicare Platino was not a *Medicare* program but rather a *Medicaid* program and thus outside

the preemptive scope of § 1395w-26(b)(3). <u>Id</u> at 51-52 (italics added). The First Circuit stated

that "[u]nder this view, Law 72 is not a prohibited Commonwealth 'standard' for operation of a

Medicare Advantage plan operating under Medicare Part C, but rather a permissible eligibility

requirement for an entity wishing to participate in a Puerto Rico Medicaid program." <u>Id</u> at 52.

Although factually dissimilar, the First Circuit discussed the Congressional intent behind

enacting 42 U.S.C. § 1395w-26(b)(3), stating as follows:

> The primary issue before us is whether 42 U.S.C. § 1395w-26(b)(3) expressly
> preempts application of Puerto Rico Law 72 in these circumstances. Express
> preemption occurs when Congress has unmistakably ... ordained that its
> enactments alone are to regulate a subject matter and state laws regulating that
> subject must fall. Congress's intent is the ultimate touchstone of an express
> preemption analysis. In determining the preemptive scope of a congressional

---

[9] In Puerto Rico, Administracion de Servicios de Salud de Puerto Rico (ASES) controls
which Medicare Advantage plans may participate in Medicare Platino, an ASES-administered
program to provide Medicare Part D drug prescription assistance to dual recipients of Medicare
and Medicaid. <u>Id</u>. at 49. Vega-Ramos, ASES Director, asserted that under Law 72, "it could not
allow any Medicare Advantage plan to join Medicare Platino if the plan owned or operated
health facilities that could provide covered services to a Medicare Platino covered beneficiary."
<u>Id</u>. The law was concerned with the possibility of self-dealing. <u>Id</u>. First Medical owned such
facilities and was denied participation. <u>Id</u>. First Medical filed suit in federal district court and
argued that the law was a "standard" and preempted by federal Medicare law, specifically, 42
U.S.C. § 1395w-26(b)(3). <u>Id</u>. at 49-50. Vega-Ramos appealed from the district court's decision
to grant an injunction to stop ASES from prohibiting First Medical's participation in Medicare
Platino, finding that Law 72 was preempted. The First Circuit vacated the injunction and found
that Law 72 was not preempted in this circumstance and thus "ASES was not precluded by
federal *Medicaid* law from enforcing Law 72 to exclude First Medical from participating in
Medicare Platino" <u>Id</u> at 53 (italics added).

enactment, courts rely on the plain language of the statute and its legislative history to develop a reasoned understanding of the way in which Congress intended the statute to operate.

The federal preemption provision relied on by First Medical states that "the standards established" under federal law for Medicare Advantage plans operating under Medicare Part C shall "supersede any State law or regulation (other than State licensing laws or State laws related to plan solvency)." 42 U.S.C. § 1395w-26(b)(3). The legislative history of this provision clarified that "the MA is a federal program operated under Federal rules and that State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." H. Conf. Rep. 108-391 at 557, reprinted in 2003 U.S.C.C.A.N. at 1926
. . .

As mentioned above, Congress's purpose in enacting § 1395w-26(b)(3) was to protect the purely federal nature of Medicare Advantage plans operating under Medicare. . . .

First Medical, 479 F.3d at 51-52(some internal citations, quotations and footnotes omitted).

Ultimately, the Court in First Medical implies that had Medicare Platino been a Medicare program instead of a Medicaid program, preemption would have applied. Specifically, the First Circuit noted that "[i]ndeed, it is undisputed that First Medical operates as a Medicare Advantage plan in Puerto Rico without having to satisfy Commonwealth standards unrelated to licensing or plan solvency." Id. at 53, n.4.

Additionally, in Uhm v. Humana, Inc., No. 06-0815, 2006 WL 1587443 (W.D. Wash., June 2, 2006), the District Court held that state tort and contract claims were preempted by the MMA, specifically § 423.440(a) which states that "[t]he standards established under this part supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) for Part D plans offered by Part D plan sponsors." 42 C.F.R. § 423.440(a). In Uhm, plaintiffs brought claims for breach of contract, violation of state consumer protection statutes, unjust enrichment, fraud, and fraud in the inducement because, after numerous requests,

forms and instructions for mail ordering of drugs (as required under Humana's plan) were not

provided to them and they were forced to purchase their prescription drugs out-of-pocket at retail

prices. Id. at *2. Although the Uhm case involved Part D benefits the operative language of §

423.440(a) is identical to the section at issue.

The Uhm court focused on the plain meaning of the statutory language and found that

"[t]he language of the MMA preemption clause is clear: if Part D establishes standards that

cover plaintiffs' claims, then those standards supersede state law, and plaintiffs' state law claims

are preempted." Id. at *2. The court found preemption consistent with the structure and purpose

of the MMA and that Congress intended that the federal program operate under federal rules

with a uniform set of grievance standards for plan participants. Id. at *4.

This court finds Uhm and First Medical persuasive. Accordingly, the court finds that the

legislative history and Congressional intent establish that the preemption provision of the MMA

was intended to preempt state law applicable to areas for which the MMA has established

regulations or standards.

The court now looks to whether standards exist under Part C which address the

plaintiffs' claims and consequently, whether plaintiffs' state law claims are preempted. The

regulations codified at 42 C.F.R. § 422.80 regulate marketing materials and election forms used

by Medicare Advantage organizations such as the defendant HealthSpring. Marketing materials

are defined as including "any informational materials targeted to Medicare beneficiaries" which

promote the Medicare Advantage plan, inform Medicare beneficiaries about enrollment, explain

the benefits of enrollment, and explain how Medicare services are covered under the Medicare

Advantage plan. 42 C.F.R. § 422.80(b)(1)-(4). The section also provides a list of examples of

marketing materials which includes items such as presentation and promotional materials,

general audience materials (newspapers, radio), letters, membership communication materials

(handbooks, wallet card instructions), and membership or claims processing activities. Id., at

(b)(5).

Paragraph (a) of 42 C.F.R. § 422.80 explains that the Medicare Advantage organization

should submit its marketing materials and election forms to CMS at least forty-five days before

the date of distribution and that CMS will review the materials and forms under the guidelines of

paragraph (c). The regulation further states that the Medicare Advantage organization may

distribute, if CMS "does not disapprove the distribution of new material or form." Id. at (a)(1)(i-

ii). A shorter alternative method exists if CMS deems the Medicare Advantage organization to

meet certain performance requirements or the organization certifies that its marketing materials

followed the guidelines or used model language. Id. at (a)(2). Under paragraphs (a) and (c),

approval, or the absence of disapproval, is based upon a CMS determination that the marketing

materials:

> (1) Provide, in a format (and, where appropriate, print size), and using standard
> terminology that may be specified by CMS, the following information to
> Medicare beneficiaries interested in enrolling:
>
> (i) Adequate written description of rules (including any limitations on the
> providers from whom services can be obtained), procedures, basic benefits and
> services, and fees and other charges.
>
> (ii) Adequate written description of any supplemental benefits and services.
>
> (iii) Adequate written explanation of the grievance and appeals process, including
> differences between the two, and when it is appropriate to use each.
>
> (iv) Any other information necessary to enable beneficiaries to make an informed
> decision about enrollment.
>
> (2) Notify the general public of its enrollment period (whether time-limited or
> continuous) in an appropriate manner, through appropriate media, throughout its
> service and continuation area.

(3) Include in the written materials notice that the MA organization is authorized by law to refuse to renew its contract with CMS, that CMS also may refuse to renew the contract, and that termination or non-renewal may result in termination of the beneficiary's enrollment in the plan.

(4) Are not materially inaccurate or misleading or otherwise make material misrepresentations.

(5) For markets with a significant non-English speaking population, provide materials in the language of these individuals.

42 C.F.R. § 422.80(c).

Also, paragraph (e) of 42 C.F.R. § 422.80 sets forth the standards for Medicare

Advantage organization marketing, which includes an admonition to the effect that in

"conducting marketing activities, MA organizations may not . . . [e]ngage in activities that could

mislead or confuse Medicare beneficiaries, or misrepresent the MA organization" as well as to

"[e]stablish and maintain a system for confirming that enrolled beneficiaries have in fact,

enrolled in the MA plan, and understand the rules applicable under the plan." 42 C.F.R. §

422.80(e)(1)(iv) & (e)(2)(ii).

Additionally, 42 C.F.R. § 422.562, captioned "General Provisions", sets forth the

responsibilities of the MA organization and the rights of the enrollees as follows:

(b) Rights of MA enrollees. In accordance with the provisions of this subpart, enrollees have the following rights:

(1) The right to have grievances between the enrollee and the MA organization heard and resolved, as described in § 422.564.

(2) The right to a timely organization determination, as provided under § 422.566.

(3) The right to request an expedited organization determination, as provided under § 422.570.

(4) If dissatisfied with any part of an organization determination,

14

the following appeal rights:

> (i) The right to a reconsideration of the adverse organization determination by the MA organization, as provided under § 422.578.

> (ii) The right to request an expedited reconsideration, as provided under § 422.584.

> (iii) If, as a result of a reconsideration, an MA organization affirms, in whole or in part, its adverse organization determination, the right to an automatic reconsidered determination made by an independent, outside entity contracted by CMS, as provided in § 422.592.

> (iv) The right to an ALJ hearing if the amount in controversy is met, as provided in § 422.600.

> (v) The right to request MAC review of the ALJ hearing decision, as provided in § 422.608.

> (vi) The right to judicial review of the hearing decision if the amount in controversy is met, as provided in § 422.612.

42 C.F.R. § 422.562(b).

Also, 42 C.F.R. § 422.566, captioned "Organization Determinations", states that Medicare Advantage organizations must have procedures for making timely organization determinations and standard procedures governing the time frame for notifying enrollees of the decisions. Among these organization determinations are decisions regarding payment, coverage, and discontinuation or reduction of services. Section 422.566 specifically includes "[t]he MA organization's refusal to provide or pay for services, in whole or in part, including the type or level of services, that the enrollee believes should be furnished or arranged for by the MA organization." § 422.566(b)(3).

The Court acknowledges plaintiffs' reliance upon a section of the CMS's Final Rules for

its explanation that in areas where the Federal Government has no authority to regulate, such as

state tort law and private contracting relationships, Part D prescription plan sponsors would be

subject to state law. (Doc. 13-5).   The section of the Final Rules set forth as follows:

> In areas where we have neither the expertise nor the authority to regulate, we do
> not believe that State laws would be superseded or preempted. For example, State
> environmental laws, laws governing private contracting relationships, tort law,
> labor law, civil rights laws, and similar areas of law would, we believe, continue
> in effect and PDP sponsors in such States would continue to be subject to such
> State laws. Rather, our Federal standards would merely preempt the State laws in
> the areas where the Congress intended us to regulate--such as the rules governing
> pharmacy access, formulary requirements for prescription drug plans, and
> marketing standards governing the information disseminated to beneficiaries by
> PDP sponsors. We believe this interpretation of our preemption authority is in
> keeping with principles of Federalism, and Executive Order 13132 on Federalism,
> which requires us to construe preemption statutes narrowly. (69 FR 46696.)

Final Rule, Centers for Medicare & Medicaid Services, Medicare Program; Medicare

Prescription Drug Benefit, 70 Fed. Reg. 4194, 4319 (January 28, 2005).

The paragraphs preceding the above quote explain the extent of preemption as to

Medicare Advantage plans under Part C, as follows:

> We concluded that the MMA reversed this presumption and provided that State
> laws are presumed to be preempted unless they relate to licensure or solvency.
> We also referenced the Congress' intent that the MA program, as a Federal
> program, operate under Federal rules, and referred to the Conference Report of
> the MMA as making clear the Congress' intent to broaden the scope of
> preemption through its change to section 1856(b)(3) of the Act. See 69 FR 46866,
> 46904. We believe that because the Congress incorporated the same preemption
> standard into the Part D program, and because the Congress required the
> preemption rules to apply consistently in Parts C and D, this same reasoning
> would apply to Part D.
>
> In addition, in the proposed rule for Part D, we stated that although the Congress
> included broad preemption rules in section 1856(b)(3) of the Act, we did not
> believe that the Congress intended for each and every State requirement applying
> to PDP sponsors to become null and void.

Id. at *4319.

While the section of the Final Rule quoted by the plaintiffs may give the impression that state tort law and state law regarding private contracting rights are not preempted by Section 232, the Final Rule states that the "[f]ederal standards would merely preempt the State laws in the areas where the Congress intended us to regulate". Id. Additionally, the Final Rules also "referenced the Congress' intent that the MA program, as a Federal program, operate under Federal rules, and referred to the Conference Report of the MMA as making clear the Congress' intent to broaden the scope of preemption through its change to section 1856(b)(3) of the Act." Id. Also, in the Final Rules the CMS addressed a comment from an insurer, and stated as follows:

> As noted in the proposed rule, we do not believe that either the principles of Federalism or the statute justify such a broad preemption interpretation. We do not believe, for example, we could preempt all State environmental or civil rights laws, nor do we believe it was the Congress' intent to do so. The preemption in section 1860D-12(g) of the Act is a preemption that operates only when CMS actually creates standards in the area regulated. To the extent we do not create any standards whatsoever in a particular area, we do not believe preemption would be warranted.

Id. Thus, the Final Rule does not provide a blanket reprieve from preemption for all state tort claims and all state private contracting claims. Reprieve occurs only when the state law claims arise in an area where Congress did not intend for the CMS to create standards and regulate. As discussed above, at least some of plaintiffs claims regardless of how they are plead arise under an area which the Congress intended for CMS to create standards and regulate and thus are preempted.

Therefore, the face of the complaint indicates that at least some of plaintiffs' claims, those for fraud based on misrepresentation regarding marketing, enrollment, filing of claims, benefits, and coverage under the plan, unjust enrichment and breach of contract to the extent

these claims result from a failure to pay benefits as promised, are preempted by Section 232 of the MMA and thus establish federal question jurisdiction.

Moreover, there is a grievance procedure created by the MMA to address complaints regarding benefits and coverage provided by Medicare Advantage plans such as HealthSpring. See 42 C.F.R. § 422.560, et seq.  Also, as an introductory matter, the regulations explain that the scope of Part 422 "establishes standards and sets forth the requirements, limitations, and procedures for Medicare services furnished, or paid for, by Medicare Advantage organizations through Medicare Advantage plans." 42 C.F.R. Ch. IV, Subch B, Part 422, Medicare Advantage Program, 42 C.F.R. § 422.1.

Accordingly, plaintiffs' causes of action based upon defendants' meeting with the plaintiffs, soliciting their enrollment, and making representations as to the quality and scope of benefits and coverage, and as to plaintiffs' ability to continue treatment with their doctors and hospitals, fall within areas which Congress intended to regulate through the MMA, and thus are preempted by federal law.  Accordingly, plaintiffs motion to remand as to this issue is **DENIED.**

**Waiver of right to remove**

Plaintiffs also argue that defendants have waived their right to remove.  Specifically, plaintiffs state that defendants were not attempting to preserve or maintain the status quo but instead manifested an intent to litigate on the merits in state court by getting a "first jump" on the discovery process by noticing the deposition of the plaintiffs in the Circuit Court of Perry County, Alabama on May 16, 2007 (prior to filing the notice of removal on June 7, 2007).

Defendants respond that plaintiffs rely on speculation as to defendants' intent behind serving the deposition notices and cite to no case law wherein any court has held that serving

deposition notices or engaging in discovery amounts to a waiver of the right to remove. Defendants argue that in order to find waiver, their actions must indicate clearly and unequivocally that they intend to litigate the merits in state court. Defendants assert that by pursuing discovery which could occur under either the state or federal rules of civil procedure, they have not manifested an intent to litigate in state court.

Although the undersigned and the parties did not locate any Eleventh Circuit Court of Appeals case which addressed the issue, the court finds the reasoning of the Northern District of Alabama in Franklin v. City of Homewood, 2007 WL 1804411 (N.D. Ala. 2007) persuasive. The District Court explained that "[f]iling an answer and making discovery requests are merely 'preliminary actions in a lawsuit, not at all comparable to the sort of dispositive motion addressing the merits of a case that arguably might most clearly demonstrate an intent to litigate.'" Id. at * 5 quoting Brown v. Sasser, 128 F. Supp.2d 1345, 1348 (M.D. Ala. 2000).[10] The Northern District also relied upon Fain v. Biltmore Secs., Inc., 166 F.R.D. 39, 42 (M.D. Ala.1996) wherein the Middle District of Alabama explained that in order to "determine whether a right to remove has been waived, a court must first determine whether actions taken by defendants in state court were for the purposes of preserving the status quo or manifested an intent to litigate on the merits in state court." Franklin, at *5.

Defendants have not clearly and unequivocally indicated an intent to litigate in state court by serving notice of the plaintiffs' depositions, but rather have taken preliminary action in a lawsuit which arguably preserves the status quo. As defendants point out, discovery will be pursued under the auspices of either federal court or state court. Thus, the act of filing a notice

---

[10] The Brown, court noted "waiver might also exist where the facts indicate that removal is, in effect, an appeal from an adverse state court judgment." 128 F. Supp.2d at 1348 n.3.

of deposition in state court does not indicate an intent to litigate on the merits in state court but rather an intent to begin the discovery process: a necessary part of litigation in either court. Therefore, defendants have not waived their right to remove the case.

IV.    **Conclusion**

Upon consideration of the foregoing and for the reasons set forth herein, the motion to remand (doc. 6) is **DENIED** and this court will exercise its supplemental and pendant jurisdiction pursuant to 28 U.S.C. § 1367(a) over any remaining state law claims to the extent they are not preempted.

**DONE** this the 7th day of August 2007.


 s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

# Exhibit B

Westlaw.

479 F.3d 46

479 F.3d 46, Med & Med GD (CCH) P 302,031

**(Cite as: 479 F.3d 46)**

Page 1

**H**

First Medical Health Plan, Inc. v. Vega-Ramos
C.A.1 (Puerto Rico),2007.

United States Court of Appeals,First Circuit.
FIRST MEDICAL HEALTH PLAN, INC., Plaintiff,
Appellee,
v.
Nancy VEGA-RAMOS, as Executive Director of the
" Administración de Servicios de Salud de Puerto
Rico" , Defendant, Appellant.
**No. 06-1514.**

Heard Oct. 31, 2006.
Decided Feb. 22, 2007.

**Background:** Insurer brought action seeking preliminary and permanent injunctive relief to enjoin governmental agency from disqualifying it as participant in its Medicare Advantage programs. The United States District Court for the District of Puerto Rico, Jay A. García-Gregory, J., 406 F.Supp.2d 150, issued preliminary injunction on behalf of insurer. Agency appealed.

**Holdings:** The Court of Appeals, Howard, Circuit Judge, held that:

(1) Court could consider denial of motion to dismiss for failure to state claim in conjunction with interlocutory appeal from order granting preliminary injunction;

(2) Puerto Rico law which prohibited any privately-run managed care plan that provided coverage for both inpatient and outpatient services, if plan could engage in self-dealing, from joining program that was designed to extend full prescription drug coverage to Puerto Rico residents eligible for Medicare and Medicaid, was not preempted by federal law on Medicare + Choice plans;

(3) Commonwealth of Puerto Rico had authority to pass and enforce law which prohibited any privately-run managed care plan that provided coverage for both inpatient and outpatient services, if plan could engage in self-dealing, from joining program that provided assistance to its dual eligible beneficiaries to pay their share of Part D covered drug costs.

Vacated and remanded.
West Headnotes
**[1] Federal Courts 170B ☞589**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(C) Decisions Reviewable
            170BVIII(C)2 Finality of Determination
                170Bk585 Particular Judgments, Decrees
or Orders, Finality
                    170Bk589 k. Dismissal and Nonsuit
in General. Most Cited Cases
Court of Appeals could consider denial of motion to dismiss for failure to state claim in conjunction with interlocutory appeal from order granting preliminary injunction, since material facts were not in dispute, only legal questions were presented, parties had ample opportunity to brief those issues before district court, and issues could be resolved as matter of law. 28 U.S.C.A. § 1292(a)(1); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Federal Courts 170B ☞589**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(C) Decisions Reviewable
            170BVIII(C)2 Finality of Determination
                170Bk585 Particular Judgments, Decrees
or Orders, Finality
                    170Bk589 k. Dismissal and Nonsuit
in General. Most Cited Cases
Appellate review of the denial of a motion to dismiss as part of an interlocutory appeal from the grant of a preliminary injunction is permissible where the underlying facts are undisputed, the parties have had a fair opportunity to brief the legal issues, and the court of appeals can resolve the case as a matter of law. 28 U.S.C.A. § 1292(a)(1); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Federal Courts 170B ☞815**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk814 Injunction

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

479 F.3d 46, Med & Med GD (CCH) P 302,031

**(Cite as: 479 F.3d 46)**

---

170Bk815 k. Preliminary Injunction; Temporary Restraining Order. Most Cited Cases
The grant of a preliminary injunction is reviewed for an abuse of discretion.

**[4] Federal Courts 170B ☞776**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)1 In General
            170Bk776 k. Trial De Novo. Most Cited Cases
Questions of law embedded within the preliminary injunction framework are subject to de novo review.

**[5] Federal Courts 170B ☞814.1**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)4 Discretion of Lower Court
            170Bk814 Injunction
               170Bk814.1 k. In General. Most Cited Cases
An injunction will be vacated where there has been a legal error.

**[6] Federal Courts 170B ☞776**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)1 In General
            170Bk776 k. Trial De Novo. Most Cited Cases
A ruling on a motion to dismiss for failure to state a claim is reviewed de novo. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[7] Federal Courts 170B ☞776**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)1 In General
            170Bk776 k. Trial De Novo. Most Cited Cases
Same de novo standard applied to review of denial of motion to dismiss and grant of injunction, since grant of injunction turned exclusively on legal rulings. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[8] Health 198H ☞457**

198H Health
   198HIII Government Assistance
      198HIII(A) In General
         198Hk457 k. Preemption. Most Cited Cases
Federal law on Medicare + Choice plans did not preempt Puerto Rico law, which prohibited any privately-run managed care plan that provided coverage for both inpatient and outpatient services, if plan could engage in self-dealing, from joining program that was designed to extend full prescription drug coverage to Puerto Rico residents eligible for Medicare and Medicaid; prohibition adopted by Congress applied only to Medicaid programs operated by states and law was permissible eligibility requirement for entity wishing to participate in Puerto Rico Medicaid program. Social Security Act, § 1856(b)(3), 42 U.S.C.A. § 1395w-26(b)(3).

**[9] States 360 ☞18.11**

360 States
   360I Political Status and Relations
      360I(B) Federal Supremacy; Preemption
         360k18.11 k. Congressional Intent. Most Cited Cases
Express preemption occurs when Congress has unmistakably ordained that its enactments alone are to regulate a subject matter and state laws regulating that subject must fall; Congress's intent is the ultimate touchstone of an express preemption analysis.

**[10] States 360 ☞18.11**

360 States
   360I Political Status and Relations
      360I(B) Federal Supremacy; Preemption
         360k18.11 k. Congressional Intent. Most Cited Cases
When determining the preemptive scope of a congressional enactment, courts rely on the plain language of the statute and its legislative history to develop a reasoned understanding of the way in which Congress intended the statute to operate.

**[11] Health 198H ☞485**

198H Health
   198HIII Government Assistance

198HIII(B) Medical Assistance in General; Medicaid
    198Hk484 Providers
        198Hk485 k. In General. Most Cited Cases
Commonwealth of Puerto Rico had authority to pass and enforce law which prohibited any privately-run managed care plan that provided coverage for both inpatient and outpatient services, if plan could engage in self-dealing, from joining program that provided assistance to its dual eligible beneficiaries to pay their share of Part D covered drug costs, since governing federal statute provided ability to exclude entities from participating in Medicaid under " any other authority." Social Security Act, § 1856(b)(3), 42 U.S.C.A. § 1395w-26(b)(3).

*47 Lizzie M. Portela, for appellant.

Richard W. Siehl with whom Baker & Hostetler LLP, Alberto G. Estrella, Kenneth C. Suria and William Estrella Law Offices, PSC, were on brief, for appellee.

Before TORRUELLA, Circuit Judge, STAHL, Senior Circuit Judge, and HOWARD Circuit Judge.

HOWARD, Circuit Judge.
This is an appeal from the entry of a preliminary injunction against Nancy Vega-Ramos, the executive director of the Administración de Servicios de Salud de Puerto Rico (ASES), the entity responsible for administering the Commonwealth of Puerto Rico's Medicaid program. The injunction requires ASES to permit health insurance provider First Medical Health Plan, Inc. (First Medical) to participate in Medicare Platino, an ASES-run program designed to extend full prescription drug coverage to Puerto Rico residents eligible for Medicare and Medicaid. Vega also *48 appeals the denial of her motion to dismiss First Medical's complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). We vacate the injunction and remand for dismissal of the complaint.

## I.

Enacted in 1965, Medicare is a federally run health insurance program benefitting primarily those who are 65 years of age and older. Before the recent extension of Medicare to cover a portion of prescription drug costs, Medicare covered only inpatient care through Part A and outpatient care through Part B. Parts A and B are fee-for-service insurance programs operated by the federal government. 42 U.S.C. § 1395c et seq. (Part A); 42 U.S.C. § 1395j et seq. (Part B). In 1997, Congress enacted Medicare Part C to allow Medicare beneficiaries to opt out of traditional fee-for-service coverage under Parts A and B. 42 U.S.C. § 1395w-21 et seq. (Part C). Under Part C, beneficiaries can, inter alia, enroll in " Medicare Advantage" plans, privately-run managed care plans that provide coverage for both inpatient and outpatient services.[FN1] Id. § 1395w-22(a)(1).

    FN1. These plans were first called " Medicare+Choice" plans but have been renamed " Medicare Advantage Plans." See Pub.L. No. 108-173, § 201 (2003).

Medicare beneficiaries who are indigent are referred to as " dual eligible" beneficiaries, meaning that they also qualify for Medicaid assistance. Id. § 1396u-5(c)(6)(A). Each state administers a Medicaid program (with substantial federal funding) to provide medical coverage to its economically disadvantaged population. See id. § 1396a et seq. Dual eligible beneficiaries receive Medicaid coverage for health services not covered by Medicare and receive Medicaid funds to pay premiums and copayments that they incur for Medicare-covered services. See Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99-509, § 9403 (1986) (codified in scattered sections of 42 U.S.C.).

In 2003, Congress enacted the Medicare Modernization Act (MMA) to extend partial coverage for prescription drugs to Medicare beneficiaries under Medicare Part D. See Pub.L. No. 173, Tit. I (2003) (Part D); see also 42 U.S.C. § 1395u-102(b) (establishing beneficiary responsibility for a portion of prescription drug costs under Part D). Under the MMA, participation in Medicare Part D is voluntary for non-dual-eligible beneficiaries. 42 U.S.C. § 1395-101(a). Medicare Advantage plans may offer Part D coverage to their enrollees. Id. § 1395-101(a)(1)(b)(i). Thus, Medicare Advantage plan enrollees may receive all of their Medicare coverage through a single managed care plan. If, however, a Medicare beneficiary is enrolled in a Medicare Advantage plan that does not offer Part D coverage, id. § 1395-101(a)(B)(iii), or the beneficiary is not enrolled in Part C at all, id. § 1395w-101(A), the beneficiary may join a " Prescription Drug Plan" to obtain Part D benefits.[FN2]

    FN2. Prescription Drug Plans are plans offered by private insurance companies,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

479 F.3d 46                                                                                             Page 4

479 F.3d 46, Med & Med GD (CCH) P 302,031

**(Cite as: 479 F.3d 46)**

approved by Medicare, which provide Part D coverage for those Medicare beneficiaries who do not receive Part D coverage through a Medicare Advantage plan. *See id.* § 1395-151(a)(14).

Unlike other Medicare beneficiaries, a dual eligible beneficiary *must* join a Part D plan (either a Medicare Advantage plan that offers Part D coverage or a Prescription Drug Plan). 42 U.S.C. § 1395w-101(b)(1)(C). If a dual eligible beneficiary fails to do so, the Secretary of Health and Human Services (Secretary) automatically enrolls the beneficiary in such a plan. *Id.* **\*49** But, as mentioned above, because Part D provides only partial prescription drug coverage, dual eligible beneficiaries typically need additional assistance to pay their portion of prescription drug costs. The MMA addresses this problem differently depending on whether the dual eligible beneficiary lives in one of the fifty states or in one of the United States' territories.[FN3]

> [FN3.] For purposes of the MMA, the Commonwealth of Puerto Rico is included as a territory.

Prior to the MMA, Medicaid typically paid prescription drug coverage for dual eligible beneficiaries. The MMA ended this practice for dual eligible beneficiaries living in the states. *Id.* § 1396u-5(d)(1). The MMA prohibits state Medicaid programs-but not territory Medicaid programs-from paying for any portion of prescription drug costs normally shouldered by the beneficiary under Part D. *Id.;* 42 U.S.C. § 1396u-5(e) (excluding territories from the prohibition on Medicaid providing prescription drug assistance). Rather than allowing Medicaid to pay these costs, the MMA creates a subsidy program through which Medicare provides funds directly to indigent Part D beneficiaries to help them pay their share of drug costs. *Id.* § 1395w-114.

The MMA excludes the dual eligible population residing in the territories from receiving these *Medicare* subsidies. 42 U.S.C. § 1395w-114(a)(3)(F). Instead, the MMA authorizes each territory to seek approval from the Secretary to implement a plan to provide full prescription drug coverage for its dual eligible population. *Id.* § 1396u-5(e). If the Secretary approves the territory's plan, the federal government increases the territory's *Medicaid* allotment to help pay for this assistance. *Id.* § 1396u-5(e)(3).

In accord with this provision, ASES submitted to the Secretary a plan entitled " Medicare Platino" to provide assistance for Puerto Rico's dual eligible population to pay its share of Part D covered drug costs. As part of the plan, ASES stated that it would extend coverage to the dual eligible population by, *inter alia,* contracting with various Medicare Advantage plans that offered Part D coverage.

After receiving approval from the Secretary for Medicare Platino, ASES sought applications from qualified Medicare Advantage plans to participate. In its request for applications, ASES stated that under Puerto Rico Law 72, it could not allow any Medicare Advantage plan to join Medicare Platino if the plan owned or operated health facilities that could provide covered services to a Medicare Platino covered beneficiary. *See* 24 P.R. Laws Ann. § 7033(c). That is, under Puerto Rico law, ASES could not permit a Medicare Advantage plan to join Medicare Platino if the plan could engage in self-dealing.

First Medical, a federally qualified Medicare Advantage plan operating in Puerto Rico, applied to participate in Medicare Platino. ASES rejected First Medical's application under Law 72 because First Medical owned health care facilities that could provide covered services to Medicare Platino beneficiaries. First Medical responded by filing suit in federal district court, arguing that Law 72 was preempted by federal law. First Medical relied on an MMA provision providing that " standards established by [Medicare] supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by a Medicare Advantage Organization**\*50** under ... Part" C of Medicare. 42 U.S.C. § 1395w-26(b)(3). The complaint alleged that Law 72 was preempted in these circumstances because it constitutes an impermissible standard governing First Medical's operation as a Medicare Advantage plan under Medicare Part C.

Vega moved to dismiss the complaint for failure to state a claim, and First Medical moved for a preliminary injunction to permit it to join Medicare Platino. The district court denied the motion to dismiss and entered the preliminary injunction. The court ruled that First Medical is a Medicare Advantage plan, and that the preemption provision contained in 42 U.S.C. § 1395w-26(b)(3) prevents

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

479 F.3d 46                                                                                                      Page 5

479 F.3d 46, Med & Med GD (CCH) P 302,031

**(Cite as: 479 F.3d 46)**

ASES from enforcing Law 72 to bar First Medical from joining Medicare Platino. Vega appealed the entry of the preliminary injunction and the denial of the motion to dismiss.

## II.

### A. Appellate Jurisdiction

[1] Before addressing the merits of the district court's rulings, we confront First Medical's challenge to our jurisdiction to consider the denial of Vega's motion to dismiss. First Medical argues that the denial of a motion to dismiss is an interlocutory ruling over which we have no jurisdiction unless the district court has certified the order for appeal under 28 U.S.C. § 1292(b), which it did not do.

First Medical is correct that, under the final judgment rule, we typically may not review the denial of a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See, e.g., Marie v. Allied Home Mort. Corp.,* 402 F.3d 1, 6 n. 1 (1st Cir.2005). But where, as here, we have before us an interlocutory appeal from the entry of a preliminary injunction, *see* 28 U.S.C. § 1292(a)(1), there is an exception to this general principle.

[2] In *Deckert v. Indep. Shares Corp.,* 311 U.S. 282, 287, 61 S.Ct. 229, 85 L.Ed. 189 (1940), the Supreme Court ruled that a court of appeals correctly considered the denial of a motion to dismiss for failure to state a claim in conjunction with an interlocutory appeal from an order granting a preliminary injunction. The Court explained that the " power [to hear interlocutory appeals from the entry of a preliminary injunction] is not limited to mere consideration of, and action upon, the order appealed from. If insuperable objection to maintaining the bill clearly appears, it may be dismissed and the litigation terminated." *Id.* This rule serves the salutary purpose of saving " both parties the needless expense of further prosecution of the suit" where the pleadings demonstrate that the suit is hopeless. *N.C. R.R. Co. v. Story,* 268 U.S. 288, 292, 45 S.Ct. 531, 69 L.Ed. 959 (1925). Appellate review of the denial of a motion to dismiss as part of an interlocutory appeal from the grant of a preliminary injunction is permissible where the underlying facts are undisputed, the parties have had a fair opportunity to brief the legal issues, and the court of appeals can resolve the case as a matter of law. *See, e.g., SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.,* 211 F.3d 21, 24-25 (2d Cir.2000); *Planned Parenthood v.*

*Camblos,* 155 F.3d 352, 359-61 (4th Cir.1998); *Doe v. Sundquist,* 106 F.3d 702, 707-08 (6th Cir.1997); *Magnolia Marine Transp. Co. v. Laplace Towing Corp.,* 964 F.2d 1571, 1580 (5th Cir.1992).

Here, the parties agree that the material facts are not in dispute and that only legal questions are presented. Moreover, the parties had ample opportunity to brief these issues before the district court and, as will be seen, the issues can be resolved *51 as a matter of law. Thus, we have jurisdiction over the denial of Vega's motion to dismiss.

### B. The Merits

[3][4][5][6][7] We review the grant of a preliminary injunction for an abuse of discretion. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996) (stating the elements necessary for obtaining a preliminary injunction). But we review questions of law embedded within the preliminary injunction framework de novo, *New Comm Wireless Servs., Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir.2002), and will vacate the injunction where there has been a legal error, *see McClure v. Galvin,* 386 F.3d 36, 41 (1st Cir.2004). We review a ruling on a motion to dismiss for failure to state a claim de novo. *See Martin v. Applied Cellular Tech., Inc.,* 284 F.3d 1, 5 (1st Cir.2002). Here, because the grant of the injunction turned exclusively on legal rulings, we apply the same de novo standard for reviewing the denial of the motion to dismiss and the grant of the injunction. *See McClure,* 386 F.3d at 41.

[8][9][10] The primary issue before us is whether 42 U.S.C. § 1395w-26(b)(3) expressly preempts application of Puerto Rico Law 72 in these circumstances. " Express preemption occurs when Congress has unmistakably ... ordained that its enactments alone are to regulate a subject matter and state laws regulating that subject must fall." *Mass. Ass'n of Health Maintenance Orgs. v. Ruthardt,* 194 F.3d 176, 179 (1st Cir.1999). Congress's intent " is the ultimate touchstone" of an express preemption analysis. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). In determining the preemptive scope of a congressional enactment, courts rely on the plain language of the statute and its legislative history to develop " a reasoned understanding of the way in which Congress intended the statute" to operate. *N.H. Motor Transp. Ass'n v. Rowe,* 448 F.3d 66, 74 (1st

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

479 F.3d 46                                                                                          Page 6
479 F.3d 46, Med & Med GD (CCH) P 302,031
**(Cite as: 479 F.3d 46)**

Cir.2006).

The federal preemption provision relied on by First Medical states that " the standards established" under federal law for Medicare Advantage plans operating under Medicare Part C shall " supersede any State law or regulation (other than State licensing laws or State laws related to plan solvency)." 42 U.S.C. § 1395w-26(b)(3). The legislative history of this provision clarified that " the [Medicare Advantage Program] is a federal program operated under Federal rules and that State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." H. Conf. Rep. 108-391 at 557, *reprinted in* 2003 U.S.C.C.A.N. at 1926; *see also Uhm v. Humana, Inc.*, No. 06-0815, 2006 WL 1587443, at *2-3 (W.D.Wash. June 2, 2006) (holding that a state-law tort action based on alleged false advertising by Medicare Advantage plan operating under Medicare Part C was preempted by § 1395w-26(b)(3)).

As set forth above, First Medical persuaded the district court to find preemption on the ground that it is a Medicare Advantage plan seeking to participate in a Medicare program, namely, Medicare Platino. Vega challenges this ruling, arguing that Medicare Platino is *not* a Medicare program but rather is a *Medicaid* program and is outside the preemptive scope of § 1395w-26(b)(3). She contends that, while ASES invited Medicare Advantage plans to join Medicare Platino, Medicare Platino is the vehicle through which the Commonwealth's Medicaid system extends full prescription drug coverage to its dual eligible population. Under this view, Law 72 is not a prohibited Commonwealth " standard" for the operation of a Medicare ***52** Advantage plan operating under Medicare Part C, but rather a permissible eligibility requirement for an entity wishing to participate in a Puerto Rico Medicaid program. We agree.

Congress has not precluded Medicaid programs operated by the territories from offering prescription drug coverage to its dual eligible population. 42 U.S.C. § 1396u-5(e). As we have explained, the prohibition adopted by Congress applies only to Medicaid programs operated by the *states*. *Id.* § 1396u-5(d)(1). With respect to the *territories*, Congress adopted an entirely different scheme which permits each territory to adopt a plan to provide assistance to its dual eligible beneficiaries to pay their share of Part D covered drug costs. *Id.* § 1396u-

5(e)(2). As an incentive for each territory to enact such a plan, Congress promised that it would increase the territory's *Medicaid* funding if the plan was approved by the Secretary. *Id.* § 1396u-5(e)(3) (citing 42 U.S.C. § 1308(f) & (g)). Thus, Congress did *not* mandate that the *federal Medicare program* pay for full prescription drug coverage for the dual eligible population living in the territories. Nor did it bar the territories from using Medicaid funds to provide full prescription drug coverage to their dual eligible populations. *Id.* § 1396u-5(e)(1)(A) (excluding territories from the prohibition on using Medicaid funds to provide prescription drug coverage for dual eligible beneficiaries).

Additionally, the Secretary's rules for approving a territory's proposed plan for providing prescription drug coverage do not limit the methods through which a territory may provide drug coverage for its residents. The regulations provide only that a territory must submit a plan that describes the type of medical assistance to be provided, the number of eligible residents, and an assurance that no more than ten percent of the increased Medicaid funding will be used for administrative expenses. *See* 42 C.F.R. § 423.907. There is *no* requirement that a territory use an entity established by the Medicare laws to provide drug coverage for its dual eligible population.

As mentioned above, Congress's purpose in enacting § 1395w-26(b)(3) was to protect the purely federal nature of Medicare Advantage plans operating under Medicare. But here, ASES was not regulating the operation of a Medicare Advantage plan operating under Medicare Part C; [FN4] it was preventing an existing Medicare Advantage plan from participating in Puerto Rico's Medicaid program. By excluding First Medical from participating in Medicare Platino, ASES was not setting a standard for the operation of a Medicare Advantage plan operating under Medicare. Rather, it was acting to protect the integrity of the Puerto Rico Medicaid system in its role as the Commonwealth's Medicaid administrator. *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 61 (1st Cir.2005) (" Medicaid ... is ... directly administered by state governments" ). Nothing in federal Medicare law prohibits this. Accordingly, we conclude that, in the circumstances presented, Puerto Rico Law 72 has not been preempted by 42 U.S.C. § 1395w-26(b)(3).

    FN4. Indeed, it is undisputed that First Medical operates as a Medicare Advantage

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plan in Puerto Rico without having to satisfy Commonwealth standards unrelated to licensing or plan solvency.

[11] First Medical offers an alternative argument for affirmance. It argues that, even if Law 72 has not been preempted by § 1395w-26(b)(3), ASES did not have authority under federal *Medicaid* law to exclude**53 it from participating in Medicare Platino. We disagree.

While Medicaid is a state-run program,FN5 Puerto Rico accepts federal Medicaid funds and thus must comply with federal Medicaid laws. *See Rio Grande Cmty. Health Ctr.*, 397 F.3d at 61. Federal Medicaid law establishes that " in addition to any other authority, a State may exclude any individual or entity [from participating in its Medicaid program] for any for reason which the Secretary could exclude the individual or entity from participation in [Medicare]." 42 U.S.C. § 1396a(p).

> FN5. Puerto Rico is treated is a state for purposes of Medicaid law. *See* 42 U.S.C. § 1301(a).

First Medical interprets this statute to limit ASES's authority to exclude entities from participating in its Medicaid program to those reasons for which the Secretary could prohibit an entity from participating in Medicare. According to First Medical, Law 72 establishes a basis for exclusion that does not exist under Medicare.

First Medical incorrectly interprets the Medicaid exclusion statute. The statute expressly grants states the authority to exclude entities from their Medicaid programs for reasons that the Secretary could use to exclude entities from participating in Medicare. But it also preserves the state's ability to exclude entities from participating in Medicaid under " any other authority." The legislative history clarifies that this " any other authority" language was intended to permit a state to exclude an entity from its Medicaid program for *any* reason established by state law. The Senate Report states:
The Committee bill clarifies current Medicaid Law by expressly granting States the authority to exclude individuals or entities from participation in their Medicaid programs for any reason that constitutes a basis for an exclusion from Medicare.... *This provision is not intended to preclude a State from establishing, under State law, any other bases for*

*excluding individuals or entities from its Medicaid program.*

S. Rep. 100-109 at 20, reprinted in 1987 U.S.C.C.A.N. at 700 (emphasis supplied). ASES was thus free, under federal Medicaid law, to enforce Law 72 to exclude First Medical from participating in Medicare Platino.

### III.

For the reasons stated, Puerto Rico Law 72 has not been preempted by 42 U.S.C. § 1395w-26(b)(3) and ASES was not precluded by federal Medicaid law from enforcing Law 72 to exclude First Medical from participating in Medicare Platino. We therefore *vacate* the preliminary injunction and *remand* with instructions that First Medical's complaint be dismissed. Costs are awarded to appellant.

*So ordered.*

C.A.1 (Puerto Rico),2007.
First Medical Health Plan, Inc. v. Vega-Ramos
479 F.3d 46, Med & Med GD (CCH) P 302,031

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.